# Stickney *v.* Adler, Malone & Co.

*Bill in Equity by Wife, to enforce Trust in Stock Certificates against Purchaser from Husband.*

1. *Purchase of stock by husband, with wife's money; resulting trust.* If the husband, having in his hands moneys belonging to the *corpus* of his wife's statutory estate, uses it in the purchase of stock, taking the certificates in his own name, the wife has an equity which she may assert, not only against him, but against any purchaser of the stock from him, unless he can claim protection as a *bona fide* purchaser without notice, actual or constructive.

2. *Notice to purchaser; burden and sufficiency of proof.*—When the wife seeks to enforce, against a purchaser from the husband, a resulting trust in certificates of stock alleged to have been purchased and paid for with moneys belonging to her statutory estate, the *onus* is on her to prove that he had notice, actual or constructive, of her equity; but, when the direct testimony of the parties to the transaction is in irreconcilable conflict, the court will consider the subject-matter, and the facts and circumstances preceding and attending the transaction, from its inception to its consummation; and on consideration of such facts in this case, the court holds, reversing the decree of the chancellor, that the purchaser had knowledge of facts sufficient to put him on inquiry, and thus charge him with constructive notice.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. G. SMITH, as special chancellor.

The bill in this case was filed on the 13th September, 1887, by Mrs. Florence H. Stickney, against her husband, J. W. Stickney, the mercantile partnership of Adler, Malone & Co., Morris Adler individually, James B. Head as trustee, and the Eutaw Mercantile Company, a private corporation; and sought to enforce a resulting trust in complainant's favor, in nineteen shares of stock in said corporation, which her husband had taken in his own name, and which he afterwards transferred to said Head as trustee, as collateral security for a note of $1,500, payable to said Morris Adler individually. The bill alleged that the stock was purchased and paid for by complainant's husband, with moneys in his hands which belonged to her statutory estate; that the note for $1,500, though payable to Adler, was given to secure a debt of about $750, which said Stickney owed to Adler, Malone & Co., and an additional sum of $750 advanced to him by them at the time; and that they had notice of complainant's equitable rights at the time the money was advanced and the stock transferred as collateral

[Stickney v. Adler, Malone & Co.]

security. The transfer of the stock was dated May 18th, 1887, and the note was one of even date, but payable two years after date, with interest; and there was a provision in it for an extension of payment. The defendants denied notice, and claimed protection as innocent purchasers for value. On final hearing, on pleadings and proof, the special chancellor dismissed the bill, holding that the complainant had failed to establish her case, because the burden of proving notice was on her, and the evidence was evenly balanced. The chancellor's decree is here assigned as error.

THOS. R. ROULHAC, for appellant.—(1.) The equity of the bill can not be doubted.—*Preston v. McMillan*, 58 Ala. 91; *Evans v. English*, 61 Ala. 416; *Daffron v. Crump*, 69 Ala. 77; *Pollak v. Graves*, 72 Ala. 347; *Kennon v. Dibble*, 75 Ala. 351; *Boyleston v. Farrior*, 64 Ala. 569; *Ryall v. Prince*, 71 Ala. 66; *Bolman v. Overall*, 86 Ala. 168. (2.) Admitting that the burden of proving notice is on the complainant, and that the direct testimony of the parties as to actual notice is in irreconcilable conflict; it is yet insisted that the facts establish constructive notice, which is equally effective.—Hill on Trustees, 165, 510; *Bank v. Jeffries*, 73 Ala. 183; *Reid v. Bank of Mobile*, 70 Ala. 199; *Johnson v. Leek*, 19 Wend. 339; *Life Asso. v. Neville*, 72 Ala. 521; *Pearson v. Daniel*, 2 Dev. & Bat. 360; *Thames & Co. v. Rembert*, 63 Ala. 569.

J. B. HEAD, *contra*.—The equity of the bill is admitted, but the complainant has failed to establish her case by evidence. The *onus* of proving notice to the defendants was on her; and the most that can be said of the evidence is, that it is evenly balanced; two witnesses on each side, with equal means of knowing the facts, directly contradicting each other. The attendant circumstances, undisputed, repel the idea of notice. It is shown that the defendants acted on the advice of counsel, and refused to accept a mortgage on land, because it belonged to the wife. Is it reasonable to suppose a transfer of stock would have been taken, if there had been any notice of the claim to it now set up? And it must be recollected that the original debt, sought to be secured, was only about $750, and $750 additional was advanced. Would any lawyer have advised, or any business man entertained, such a proposal, where there was every thing to lose, and nothing to gain? If the question of notice is merely left in doubt, this court will affirm.

CLOPTON, J.—The proof leaves no room for doubt that the stock in the Eutaw Mercantile Company, pledged by the

[Stickney v. Adler, Malone & Co.]

husband of the complainant as security for a debt he owed Morris Adler, was purchased and paid for with money of the statutory separate estate of complainant. Such investment by the husband and trustee, when the title to the property is taken in his own name, gives the wife an equity which she may assert against the trustee and all other persons except *bona fide* purchasers without notice, actual or constructive. The equity of complainant does not seem to be controverted. The disputed matter is, whether Adler or Jarvis, who was his agent to make the negotiation, had notice of her equity.

On this question of fact the direct testimony is in irreconcilable conflict. J. W. Stickney, the husband, and F. G. Stickney, his brother, testify that notice was given on two separate occasions, to Jarvis during the negotiation in the back yard of Morris' store in Eutaw, and afterwards to Adler at the hotel, where the transaction was consummated. Both the Stickneys testify substantially, that when Jarvis suggested on the first occasion that J. W. Stickney held shares of stock in the Eutaw Mercantile Company, and said if he would pledge the stock as collateral, Adler, Malone & Co. would lend him money to pay their debt and an additional sum to pay his other creditors, F. G. Stickney stated to Jarvis that the stock was bought with money belonging to complainant; and both testify further, that on the second occasion, at the hotel, Adler was told that the stock was bought with the money of complainant. Jarvis positively denies notice on the first occasion, and states that the proposition to give the stock as security "came from the brother of J. W. Stickney, or rather he, the brother, stated that J. W. Stickney had no bonds or stock he could give for security except the stock named." Both Adler and Jarvis deny notice on the second occasion, and both swear that they had no notice or knowledge of complainant's claim, or that the stock was purchased with her money, from either of the Stickneys, or any one else. J. W. Stickney further testifies, that during the interview between him and Jarvis at Havana, prior to the meeting at Morris' store, he told Jarvis that the stock was bought with complainant's money; but this is also denied by Jarvis, who testifies that nothing was said by either of them about the stock in any conversation prior to the meeting at Morris' store. If this evidence stood alone, if there were no facts or circumstances furnishing aid in weighing it, we would concur in the finding of the special chancellor, that complainant had failed to prove notice, the burden of proof resting on her.

But, when the direct testimony is conflicting, the nature of the subject-matter of investigation, the facts and circumstances

[Stickney v. Adler, Malone & Co.]

preceding and attending the transaction, and the steps towards its consummation, may and should be considered. "Direct testimony is not only capable of being strengthened or weakened to an indefinite extent, by its conformity on the one hand, or inconsistency on the other, with circumstances collateral to the disputed fact, but may be rebutted by means of such evidence;" also, by its conformity or inconsistency with experience.—Starkie on Ev. 838. We shall state the collateral facts as gathered from the evidence of Adler and Jarvis.

The store of J. W. Stickney, who was then and had been previously engaged in merchandising, was burned in April, 1889, whereby he was rendered incapable of paying his debts. At that time, he was indebted to Adler, Malone & Co., in an amount exceeding seven hundred dollars, which indebtedness they were naturally desirous, and made active and repeated efforts, to secure. Shortly after the fire, Adler went in person to see Stickney, and, accomplishing nothing, sent Jarvis to try and get the debt secured, or make a loan for him out of which the debt due the firm would be paid. On his visit, Jarvis proposed to Stickney, if he would secure the debt due Adler, Malone & Co., they would give him long time, and advance him some money. No conclusion having been reached, he asked Stickney to meet him in Eutaw to arrange the indebtedness and about getting money, which he agreed to do. Accordingly, they met a few days thereafter in the back yard of Morris' store, when it was agreed that Adler, Malone & Co. would advance Stickney eighteen hundred dollars on twenty shares of the stock, and sell him some goods. When Adler, a few days thereafter, went to Eutaw to close the transaction and make the loan, this agreement was abandoned; and after several hours negotiation, another was entered into, to the effect, that Adler would loan him fifteen hundred dollars on nineteen shares of the stock, and if he paid the debt of Adler, Malone & Co., and would settle with his other creditors, he would sell him goods. Stickney transferred in writing the certificates of stock to James B. Head, to hold in trust for Adler.

Jarvis had known Stickney since 1872, but did not know what property he owned, or that he owned any before his marriage with complainant in December, 1884, but knew he did not own the stock in question before his marriage. The Eutaw Mercantile Company was organized in September, 1885, and Stickney purchased the stock some three or six months thereafter. Jarvis was a stockholder from the organization of the company, and was assistant manager for twelve months. He states that he knew, at the time he was making efforts to

secure Adler, Malone & Co.'s debt, that Stickney was a stock-holder in the company; that the stock was in his name, and did not know that it had ever been transferred. Adler testi-fies that, when he met Stickney in the road on his visit soon after the fire, he saw some papers in his pocket that resembled stock certificates, and got Jarvis to inquire; and learned that stock of the Eutaw Mercantile Company belonged to, or stood in the name of Stickney, from Jarvis in the early part, before the tenth, of May. Comparing this date with the statement of Jarvis as to the time when he made the first effort to get the debt secured, it appears that Adler was informed that the stock stood in the name of Stickney before such effort was made. Further, on his first visit to Stickney for the purpose of getting the debt secured, Jarvis first proposed to Stickney to take a mortgage on real estate, but was informed that the land belonged to his wife, and the debt could not be secured by such a mortgage, and admits he might have suggested to Stickney to see his wife in regard to giving a mortgage on some real estate, but not in reference to the stock. When or from whom he received the information, or by whom he was in-formed that the mortgage would be invalid, he does not state; but it seems he could not have received it from any other per-son than Stickney, for they separated after this proposition and suggestion were made, with an agreement to meet in Eu-taw. Nothing was said subsequently about the mortgage.

Jarvis, as travelling salesman for Adler, Malone & Co., had solicited Stickney's trade; hence his interest in having the debt secured. Feeling this interest, having first proposed to take a mortgage on land, which was not taken, because it be-longed to complainant, having been specially directed by com-plainant to inquire about stock, knowing that it stood in Stick-ney's name, and not knowing of his having any other property or means, it seems natural and reasonable that he would have inquired about the stock. Under the circumstances, the dili-gent, eager creditor would have been swift in the matter, as Adler was when he got Jarvis to inquire on merely seeing papers in Stickney's pocket resembling stock certificates. These antecedent collateral facts are inconsistent with the fact that nothing was said about the stock before the meeting in Eutaw, and that the first proposition in respect to it came from F. G. Stickney; they are not in conformity with experi-ence. And why should F. G. Stickney have remarked that J. W. Stickney had no bonds or stock he could give for security except the stock in the Eutaw Mercantile Company, if nothing had been previously said about bonds and stock, calling for such remark? They can only be harmonized on the theory,

[Stickney v. Adler, Malone & Co.]

that Jarvis had reason to believe that the stock also belonged to complainant, though he may not have had direct notice.

The character of the transaction is unusual. Putting it in the form of a loan of fifteen hundred dollars by Adler personally, and taking the certificates as security for such loan, Adler paying to Adler, Malone & Co. the amount of their debt, making it entirely an individual transaction, was out of the usual and ordinary mode of transacting such business. This is explainable only on the idea, that he supposed an arrangement of that kind would tend to guard and strengthen a position liable to be assailed.

But it may be said, that Adler would not have agreed to loan Stickney a sum of money in addition to the amount of the debt, unless he believed the stock belonged to him and the security was good; that such conduct was unreasonable. We admit the force of the suggestion; but it appears that without such inducement, he could not have obtained the certificates of stock; and we know from experience that men sometimes take such risks. He may have supposed from the long credit given—two years, with the right to extend it several months before the stock could be sold—that Stickney would pay the debt and, holding the stock as security, would induce him to do so, and that no occasion would probably arise for calling in question his right to the stock.

Our conclusion is, an examination and comparison of the entire evidence show that, if there was no direct notice, there was knowledge of facts sufficient to put him on inquiry, which, if pursued, would have led to knowledge of complainant's equity. In discharging the delicate duty, which sometimes devolves on the court, of weighing the conflicting testimony of witnesses of equal credibility apparently, we do not wish to be understood as intending to impute to any witness false fabrication, or intentional false swearing; but rather attributing the conflict to forgetfulness or confusion of the times when, and the order in which, some things occurred.

The demurrer to the cross-bill of J. W. Stickney was properly sustained. If there was a breach of the agreement by failure to deposit the amount promised, and its appropriation to the payment of goods, the remedy at law is adequate and complete.

Decree rendered on the cross-bill affirmed. Decree on original bill reversed, and decree rendered that complainant is entitled to relief, and that it be referred to the register to ascertain and report to the next term of the Chancery Court the amount of the *corpus* of the separate estate of complainant, which was invested in the purchase of the stock.

Reversed and rendered.     COLEMAN, J. not sitting.