# Randolph v. East Birmingham Land Co. *et al.*

*Bill in Equity to set aside Deed to Lands, and enforce a Trust therein.*

1. *Trusts; when deed to father makes him a trustee for the benefit of his son.*—When a father purchases lands for the use and benefit of his minor son, and has the conveyance made to himself in trust, with the provision therein that, until the termination of the trust, upon his son arriving at the age of twenty-one, he should manage and control

[Randolph v. East Birmingham Land Co. *et al.*]

the property, use and appropriate the rents, profits and income therefrom, lease, mortgage or sell the same and reinvest the proceeds, in such manner as he might think best, for the use and benefit of his said son, and he joins in the execution of such conveyance, the father becomes a trustee for the son, and assumes the same responsibilities and obligations as would a third 'person if the father had had the lands conveyed to him by a deed creating the same trust.

2. *Same; same; courts will interfere to prevent wrongful exercise of discretion vested in trustee.*—The powers conferred upon the trustee by such a deed are not mere powers, purely discretionary with the trustee, creating a dry trust, but they create a trust, coupled with an interest, binding upon the conscience of the trustee; and a court of equity will interfere to prevent the wrongful exercise of the discretion by the trustee, when it is infected with fraud or malfeasance, or the discretion is mischievously and ruinously exercised.

3. *Same; sale of lands held in trust to a land company a breach of the trust, and void.*—A trustee with authority to lease, mortgage or sell the land held in trust and reinvest the proceeds, but not authorized by the trust deed to invest the trust funds in stock or shares of private corporations, can not sell the lands, the subject of the trust, to a land company and take in payment of its purchase price stock in said company; and such sale is a violation of good faith on the part of the trustee, and is void.

4. *Same; purchasers of lands held in trust with knowledge of the trust, acquire no title as against the cestui que trust.*—Where the land is sold by a trustee to a private corporation in violation of his trust, and is afterwards sold to parties who had knowledge of the conditions of the trust and of the illegal sale to their vendor, such purchasers are not *bona fide* purchasers for value without notice, and they acquire no rights to said land as against the *cestui que trust.*

APPEAL from the Chancery Court of Jefferson

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by Ryland Randolph, Jr., by his next friend, against the East Birmingham Land Company, Ryland Randolph, Sr., James E. Webb, H. C. Tompkins and D. H. Sumner, and alleges that Ryland Randolph, Sr., the father of complainant, desiring to donate to his son the lands in question, purchased them from one Briggs, who was then the owner, for the use and benefit of the complainant; and on the 6th day of March, 1874, said Briggs, at the request of complainant's said father and for the consideration expressed in the deed, conveyed to him the said land in trust for the benefit of complainant; and the father accepted the trust, by executing the deed, which deed was duly probated and recorded in the proper office on the 10th day of March,

1874. On the execution of said deed said Ryland Randolph, Sr., took possession of said land pursuant to and under the trust therein set forth, and afterwards paid said Briggs in full for the same. By the deed the lands were conveyed to said Ryland Randoph, Sr., in trust for the use and benefit of complainant, and said trust was established and engrafted upon the same as follows: "That the said Ryland Randolph, Sr., should control, manage and direct the said lands until the termination of the trust, and use and appropriate the rents, profits and income of the same for complainant's use and benefit as he may see proper; to lease, mortgage or sell the same for complainant's use, re-invest the proceeds in such manner as he might think best for complainant's use and benefit, to make a good fee simple title to the purchaser with covenants of warranty; said trust to terminate upon the said Ryland, Jr., arriving at the age of 21 years; and then he shall have the right to take charge of the property." Ryland Randolph, Sr., retained possession of said lands under said trust until the 6th day of December, 1886, when he sold the same to the East Birmingham Land Company under the following circumstances: Said lands are situated in the suburbs of Birmingham, where at that time the price of real property had become, by reason of reckless speculation, greatly inflated and fictitious. This had given rise to a large number of private corporations, which were intended for speculation in lands and stocks, and which were certain to result in disaster to the ultimate holders of the stock in such companies. For the purpose of organizing a company of this sort, George Kelley and others bargained with the said Ryland Randolph, Sr., that they would organize said East Birmingham Land Company, and that the latter would convey said lands to the company at the price of one thousand dollars per acre, and receive payment therefor in the stock of said company, at the face value of one hundred dollars per share. Pursuant to said agreement said East Birmingham Land Company was organized and said land conveyed on the 6th day of December, 1886. Though the deed recites a consideration of one thousand dollars per acre, nothing was really paid for said land except stock in the company. In consideration of said deed, and in payment for the land said company issued to said Ryland Randolph, Sr., in his

own name, its stock to the amount of eighty thousand dollars, which was the sole consideration for the execution of the deed. The capital stock of the company was originally eight hundred and fifty thousand dollars. Each of the parties named as organizers of the company subscribed for 850 shares, except one West, who subscribed for 840, and Ryland Randolph, Sr., for ten.

This stock was paid for by a conveyance of lands to the company, including that above described, and at the same time or soon after about four hundred thousand dollars of the stock of said company was issued to the above named and other organizers and promoters of said company. This $400,000 of stock was issued without any consideration whatever, and was claimed by said parties as compensation for their skill and ability in inducing innocent third parties to put their lands in the enterprise. In consequence of the wild and crazed condition of the public mind, said stock was selling at that time at about par and said parties, well knowing that this condition of things would not last, obligated the said Ryland Randolph, Sr., not to dispose of his stock for thirty days, so as not to flood the market and in the mean time sold their own stock, which cost them nothing, at about par. Pursuant to said agreement, said Randolph, Sr., did not sell the said stock, and in about two months afterwards it became almost worthless, and was either wholly lost or disposed of by him at a nominal price. At the time of the said transaction the said company and its officers, who were composed exclusively of the promoters mentioned, knew of said trust, and they and the said Ryland Randolph, Sr., were guilty of a deliberate breach of said trust and the rights of complainant, in the conveyance of said land to said company and in converting said trust property into stock, which they well knew would soon become utterly worthless, and issuing and taking the certificates of stock in the individual name of Ryland Randolph, Sr. At the extravagant and inflated prices then existing said lands were not worth more than $400 per acre, yet they were conveyed to the company at one thousand dollars per acre, and the stock was immediately watered to the extent of five hundred dollars per acre. At the time of said conveyance, it was the purpose of the company and its aforesaid managers to issue and sell said said stock on speculation. Under

these circumstances they well knew, and it was a fact, that they were destroying the trust property.

The bill further charges that about the 11th day of April, 1891, the East Birmingham Land Company made a general assignment of its property, including the lands above mentioned, to D. H. Sumner for the purpose of securing the payment of its past indebtedness. Said Sumner had notice of the trust. On the 7th day of July, 1891, Sumner, as trustee and assignee, sold the lands under the power contained in the deed of assignment to the defendants, Webb and Tompkins, and executed a deed to them, a copy of which is attached as an exhibit to the bill. This deed did not convey or purport to convey any thing more than the interest of the East Birmingham Laud Company in said lands, and the vendees took the same subject to the claims and equities of complainant, and Webb and Tompkins bought the land well knowing that the said Sumner could not convey the fee simple title thereto, being cognizant of the facts set forth in the bill. Said East Birmingham Land Company and Ryland Randolph, Sr., are both insolvent. The bill prays that the deed made by Ryland Randolph, Sr., to the East Birmingham Land Company, the deed of assignment of said company to D. H. Sumner and the deed made by said D. H. Sumner to Webb and Tompkins, so far as they purport to convey the lands conveyed in trust for Ryland Randolph, Jr., be set aside and annulled ; and the trust enforced against the land in the hands of defendants, Webb and Tompkins, and for general relief.

The defendants demurred to the bill on the following grounds : 1st. The bill shows that the complainant is not entitled to the relief sought, nor to any relief. 2d. The bill shows that these defendants are innocent purchasers of the lands described therein. 3d. The bill shows that the said Ryland Randolph, Sr., had a perfect right to convey said lands as he is shown to have conveyed them. 4th. The bill shows that the complainant Ryland Randolph, Jr., had no interest or equity in the said lands at the time of the conveyance to said company. 5th. The bill and exhibits thereto show that these defendants have acquired a perfect and indefeasible title to said lands. The chancellor sustained this demurrer ; and from this decree the complainant appeals, and assigns the same as error.

WHITE & HOWZE and CARMICHAEL & THATCH, for appellant.—1. The trustee must use sound discretion and good faith and invest the funds so that they will be safe. He must not have speculation in view, but rather a permanent investment, considering both the probable income and the probable safety of the capital.—Perry on Trusts, § 452; *King v. Talbot,* 40 N. Y. 76.

2. The allegations of the bill show that the trustee not only converted the property to his own use, but was totally reckless of the rights and interests of his *cestui que trust.* It charges that he sold the land for stock in the defendant company and took the certificates of stock in his own name. This was a conversion which authorized the *cestui que trust* to repudiate the transaction and claim the land in the hands of the defendant company, or purchasers from it, who are not entitled to protection as *bona fide* holders.—*Shorter v. Frazer,* 64 Ala. 74; *Preston v. McMillan,* 58 Ala. 84; *Lehman v. Lewis,* 82 Ala. 129; *Stickney v. Adler,* 91 Ala. 198.

3. One who purchases trust property from the trustee, knowing his purpose to use the proceeds in stock speculation, is liable to the *cestui que trust.*—*Leake v. Watson,* 20 Atl. Rep. 343. The bill alleges that the trustee was in this transaction guilty of the most reckless speculation in stocks, and that the defendant company was an actual party to it. Being of a party to the sale of the stock to the trustee, and of course fully aware of the character of the transaction, they became responsible for the trust fund and its misuse.—*Dawson v. Ramser,* 58 Ala. 575; Code of 1886, § 1843.

4. A trustee with power to sell and reinvest is not authorized to invest in railroad bonds, unless certainly of a permanent character:—Amer. Digest 1889, p. 3803, § 207; *Buckley v. Ketteltas,* 6 N. Y. 384. It may well be doubted whether the deed does not contemplate a re-investment in real estate only. Be this as it may, the re-investment in the stock of the defendant company was certainly not justifiable. In England, trustees were forbidden to invest in stocks or shares of any private trading corporation.—Perry on Trusts, § 455. This principle prevails in America. In no case will such investment be justified, except on the ground that it is made in stocks not subject to fluctuation and as safe as real estate.—Perry on Trusts, § 456; 2 Pomeroy's Eq., § 1074; *Mattocks v.*

*Moulton*, 24 Atl. Rep. 1004 (Me.) *Simmons v. Oliver*, 43 N. W. Rep. 561, (Wis.) ; *Clark v. Garfield*, 8 Allen 427 ; *Ackerman v. Emott*, 4 Barb. 626; *Adair v. Brimmer*, 74 N. Y. 539.

5. The land company was charged with notice of the existence of the trust, which was fully disclosed on the face of the deed held by Ryland Randolph, Sr., from whom they purchased, and they are bound to take notice of its contents.—*Creswell v. Jones*, 68 Ala. 420 ; *Thomas v. Rembert*, 63 Ala. 561 ; *Corbett v. Clenny*, 52 Ala. 480 ; *Johnson v. Thweatt*, 18 Ala. 42. One who buys from a trustee with power to sell is liable if he colludes or co-operates with him in the misapplication of the trust fund, or has knowledge of his intention to misapply it.—*Dawson v. Ramser*, 58 Ala. 573 ; Code of 1886, § 1843. One who buys with notice, express or implied, of a trust takes subject to the same ; and will be compelled to perform the trust.—*Union Pac. &c. Co. v. McAlpine*, 129 U. S. 305 ; *Smith v. Oliver*, 31 Ala. 39 ; *Martin v. Bank*, 31 Ala. 115.

6. The power to re-invest necessarily involves the exercise of judgment which, of course, must be controlled by the general rules of law upon the subject. The addition of the words "as he may deem best" simply expresses what is included in the power to invest or to re-invest, to-wit, the exercise of judgment, and adds nothing to the power, nor does it force the trustee from the duty and obligation to conform to these rules of law.— *Kimball v. Reding*, 64 Amer. Dec. 333 ; *King v. Talbot*, 40 N. Y. 76 ; *Libbett v. Maultsby*, 71 N. C. 345 ; *Pray's Appeals*, 34 Penn. St. 100 ; *Adair v. Brimmer*, 74 N. Y. 539. As we have stated, the property is clearly and unmistakably dedicated to the use of the complainant in almost every sentence referring to the manner of the trustee's holdings ; and the use of the words "as he may deem best" can not be construed as conferring upon the trustee the arbitrary power to do as he may choose.— *McDonald v. McDonald*, 92 Ala. 537 ; *Taylor v. Harwell*, 65 Ala. 1 ; *Haydel v. Hurck*, 5 Mo. App. 267 ; *Babbitt v. Babbitt*, 26 N. J. Eq. 44.

7. The land in the hands of the defendants, Webb and Tompkins, is subject to the trust. It was first conveyed by the East Birmingham Land Company to D. H. Sumner by deed of general assignment to secure

the payment of its then existing debts. This convey-
ance did not make the assignee a *bona fide* purchaser
without notice. Such an assignee succeeds only to the
rights of the assignor, and is bound and affected by all
the equities and subject to all the defenses which would
have affected the assignor. He is in no just sense a
purchaser for value.—*Granger's Life Ins. Co. v. Kamper*,
73 Ala. 325; *Frow v. Downman*, 11 Ala. 880; *Walker v.
Miller*, 11 Ala. 1067; *Smith v. Perry*, 56 Ala. 266; *Smith
v. Bank*, 21 Ala. 125.

JAMES E. WEBB, *contra*.—1. Under the power con-
tained in the deed, "to sell the same and re-invest the
proceeds as he may think best," the trustee had the
power to sell the lands for stock, and to re-invest the
proceeds in trust.—*Foscue v. Lyon*, 55 Ala. 440.

2. Having exercised this discretion, and sold the
lands for stock in a private corporation, the trustee is
not liable. It is not the rule in the United States to
hold trustees liable for stock investments generally con-
sidered good, when they have such discretion given
them.—11 Amer. & Eng. Encyc. of Law, 818, 831; *Har-
vard College v. Armory*, 9 Pick. (Mass.) 446; *Lovell v.
Minot*, 20 Pick. (Mass.) 116; 25 Amer. Law Reg. (U. S.)
21; *Lamar v. Micou*, 112 U. S. 452.

3. Neither the constitution nor statutes of the State
prohibit stock investments by a trustee. The only pro-
vision in the constitution is section 35 of Article IV,
which only prohibits the legislature from authorizing
such investment of trust funds by trustees. But there is
nothing which prohibits the creator or grantor of the
trust property giving the trustee full power; and the
trustee is only liable for want of diligence and good
faith. He is not responsible for any unintentional mis-
takes.—*Foscue v. Lyon*, 55 Ala. 452; *Fahnestock's Appeal*,
104 Pa. St. 46; *Mills v. Hoffman*, 26 N. Y. (Hun.) 594;
*Perrine v. Vreeland*, 33 N. J. Eq. 102; *Bowker v. Pierce*,
130 Mass. 262; *French v. Currier*, 47 N. H. 88; *Barney v.
Parsons*, 54 Vt. 623; *Harrison v. Mock*, 10 Ala. 185.

4. Webb and Tompkins, who purchased at the sale
by the assignee of the land company, are entitled to
protection as *bona fide* purchasers, just as are those who
purchase at the sheriff's sale with notice are entitled
to protection against equities.—*Thames & Co. v. Rembert*,

63 Ala. 572; *Spira v. Hornthall*, 77 Ala. 145; *Whitfield v. Riddle*, 78 Ala. 99 ; *Turner v. Wilkinson*, 72 Ala. 361; *Cahalan v. Monroe*, 56 Ala. 303; *Daniel v. Sorrells*, 9 Ala. 437.

HARALSON, J.—1. Ryland Randolph, Sr., purchased the land in question from J. W. Briggs, for which he paid him $1,760. The purchase was made by him for the use and benefit of his son, Ryland Randolph, Jr. The deed recites, that he was desirous, in making the purchase, to invest that amount of money in this land for the use and benefit of his said son, and make a donation of it to him and his use. By his own directions, the conveyance was made to him, as trustee for his son. He engrafted upon the trust, the provision, that he should control, manage and direct the property, until the termination of the trust—which was provided to be, when his son should arrive at the age of twenty-one years, if he should live so long—and, until that time, use and appropriate the rent, profits and income of the same, as he might see proper, for the use and benefit of the *cestui que trust,* and to lease, mortgage, or sell the same, and reinvest the proceeds in such manner as he might think best for his said son's use and benefit. He joined said Briggs in the execution of the conveyance.

The transaction, in its legal effect, is the same as if said Randolph, Sr., had taken the conveyance directly to himself, and had then executed a deed to a third person, in whose honesty and judgment he had confidence, engrafting upon the trust the same power and discretion he reserved in this deed to himself. He occupies in this deed, the same relations, responsibilities and obligations as a trustee to his said son, as a trustee, in the person of a third person, in the case we have supposed, would have sustained to the son.

2. What obligations, then, did the trustee in this deed sustain to the *cestui que trust?* The deed itself describes him as a trustee. It gave him the power to manage and control the trust estate, until the son arrived at the age of twenty-one years, and, meantime, to lease, mortgage or sell the same, and reinvest the proceeds; but, whatever he did, was repeatedly stipulated to be for the use and benefit of his son. It was not imperative on him to lease, mortgage or sell. He had the discretion to

do either. He was not a mere *naked* or dry trustee, but one with active duties to perform, such as are referred to in section 1832 of the Code.—*You v. Flinn*, 34 Ala. 409. The power reserved by the donor in this instance, who was also the donee in trust, to sell, was not a *mere* power, purely discretionary with him; but it was a trust, coupled with an interest, obligatory on the conscience of the donee.—Hill on Trustees, *67; 1 Perry on Trusts, § 248; 18 Am. & Eng. Encyc. of Law, 882, 887-8.

3. In all cases, as has been held, powers or trusts must be construed according to the intention of the parties, to be gathered from the whole instrument.—1 Perry on Trusts, § 248; *Kerr v. Verner*, 66 Penn. St. 326; *Guion v. Pickett*, 42 Miss. 77. And when a gift in a will or deed is expressed to be for the "use and benefit" of another, or to be at the disposal of the donee "for himself and children," or "towards his support and family," or "to enable the donee to provide for and maintain" his children; or where the gift is expressed to be made, "to the end," or "to the intent" that the donee should apply it to certain purposes, the terms thus employed have been held sufficient to fasten a trust upon the conscience of the trust donee.—Hill on Trustees, *66, *67.

*"Mere powers,"* says Mr. Perry, "are purely discretionary with the donee; he may or may not execute them, at his sole will and pleasure, and no court can compel or control his discretion, or exercise it in his stead or place, if for any reason, he leaves the power unexecuted. If the donee executes the powers, but executes them in a defective manner, courts may aid the execution and supply the defects, but they cannot exercise mere naked powers conferred upon a donee. It is different with powers coupled with a trust. In this class of cases, the power is so given that it is considered a *trust* for the benefit of other parties  *  *  and becomes imperative.  *  *  Courts will not allow a clear trust to fail for want of a trustee; nor will they allow a trust to fail by reason of any act or omission of the trustee." And, as was held in *McDonald v. McDonald*, 92 Ala. 542, "A court of equity will never favor a construction that confers upon a trustee absolute and uncontrollable powers."—1 Perry on Trusts, § 248; 2 *Ib.* § 507, and authorities there cited.

4. But, while the court will not generally decide upon

the propriety or impropriety of a refusal of trustees to act, in cases where their powers are entirely discretionary, its failure to exercise its directing and restraining authority proceeds upon the principle, that the trustees are acting in *good faith*, without fraud or collusion, and without selfish, corrupt or improper motives. Lewin, in his work on trusts, as a summation of the authorities on the subject, states the principle to be, that "There is sufficient ground for the interference of the court, wherever the exercise of the discretion by trustees is infected with fraud or misbehavior, or they decline to undertake the duty of exercising the discretion; or generally where the discretion is mischievously and ruinously exercised, as if a trustee be authorized to lay out money upon government, or real or personal security, and the trust fund is outstanding upon any hazardous security. But, when the course pursued by the trustees is within the letter of the power, the *onus* is on the person challenging their conduct to show that their discretion has been mischievously, or ruinously, or fraudulently exercised." 2 Lewin on Trusts, *616, and authorities cited; 2 Perry on Trusts, §§ 508-511; *Gossen v. Ladd*, 77 Ala. 224.

5. The question just here arises as applicable to the facts of this case: Was the sale of the land, the subject of the trust, by the trustee to the East Birmingham Land Company, and taking in payment of its purchase price the stock of said company, such a violation of good faith on the part of the trustee, as will authorize the court to interfere to set it aside?

Without statutory direction, or specific authority in the instrument creating the trust, or an order of court allowing it, it may be stated as a general rule, that trustees are not permitted to invest trust funds in the stock or shares of any private corporation, and the rule is not varied by the fact that the stock is considered good by discreet business men who evince their confidence by investing their own funds therein.—11 Am. & Eng. Encyc. of Law, 813. If there are no directions in the instrument, nor rules of court, nor statutory provisions in relation to investments, they must be governed by sound discretion and good faith.—Perry on Trusts, § 452, and authorities in n. 1.

The rule perhaps can not be better stated than as we

find it laid down by the author last cited : "In States where there are no statutes or rules of court regulating investments, trustees are bound to act in good faith and with sound discretion in investing trust money ; and if they so act they are not responsible for any loss that may happen; but to invest in mere personal securities is not a sound discretion anywhere. Nor is it sound discretion for trustees to subscribe trust funds to new enterprises, as for the stock of a new manufacuring, insurance, or railroad corporation, when the undertaking must, in the nature of things, be experimental; and it will not excuse the.trustee that he subscribes his own money to such enterprises, as it is permitted to him to speculate with his own money, if he sees fit."—Perry on Trusts, § 459. "And whatever may be the apparent advantages of such a course, and however well-intentioned the conduct of the trustee, there is no question, but that the court will visit upon him any loss resulting from such a step."—Hill on Trustees, *379.

The policy of the law of the State forbids such investments, for it is provided in the constitution itself, that "No act of the General Assembly shall authorize the investment of any trust fund by executors, administrators, guardians and other trustees in the bonds or stock of any private corporation."—Art. IV. § 35.

The trustee in this case, embarked the whole trust estate in the stock of a recently formed land company, organized, as is alleged, as a purely speculative venture, the risks in which were extremely hazardous, and it is averred, that the certificates of stock were issued to, and the trustee took them , in his own name. He thereby imperilled it in a way that sound discretion and good faith can not sanction. The failure and winding up of· the enterprise, in the entire loss, as is alleged, to all the stockholders of their capital stock, furnishes evidence of the recklessness of the hazardous risk this trustee assumed.

6. It is averred in the bill, that at the time of the purchase of said lands by the East Birmingham Land Company, the company and its officers knew that said lands were held by the said Ryland Randolph, Sr., in trust for appellant, under the deed of trust which. is exhibited to the bill. It is further averred, that the defendants, Webb and Tompkins, who became the purchasers

of the land at the sale by the assignee of the company, and who are now in possesion of it, bought the same at said sale well knowing that the assignee could not convey to them a fee-simple title thereto ; and, cognizant of the facts set forth in the bill, they took and now hold the property subject to the trusts in favor of complainant in the deed to said trustee. If these allegations are true, they are not *bona fide* purchasers for value without notice, and cannot claim protection as such. The land company participated and aided the trustee in the violation of his trust, and acquired no rights as against the *cestui que trust* ; the trustee, Summer, in the deed of general assignment by the company, acquired no greater rights than the company had, and Webb and Tompkins, the purchasers at the assignee's sale, with notice of all the facts, acquired no greater rights than had been conferred by the deed of assignment on the assignee.—Code, § 1843 ; *Dawson v. Ramser*, 58 Ala. 573 ; *Shorter v. Frazer*, 64 Ala. 74 ; *Stickney v. Adler*, 91 Ala. 198 ; *Sampson v. Jackson*, 103 Ala. 550 ; *Leake v. Watson*, (Conn.,) 20 At. Rep. 343.

The demurrer to the bill should have been overruled. Reversed and remanded.