# Hill *v.* Nelms.

*Statutory Detinue for Mortgaged Property.*

1. *Plea averring alteration of writing sued on.*—In an action by the mortgagee, against the mortgagor of personal property, a plea averring that, "after the same was executed by this defendant, said mortgage was materially changed or altered, without the knowledge or consent of this defendant," is sufficient, without an averment that the alleged alterations "were made after delivery to the mortgagee," or that they "were made by the mortgagee, or by his knowledge or consent."

2. *Burden of proof as to alterations.*—When alterations appear on the face of a written instrument, obviously material and beneficial to the party claiming under it, the *onus* is on him to remove or explain the suspicious circumstances; as by showing that the alterations were made by a stranger, without his knowledge or consent, or before the completion of the instrument, or with the consent of the party to be charged.

3. *Contracts of infant; disaffirmance after majority*—A deed, or mortgage, executed by an infant, does not become valid and binding on

[Hill v. Nelms.]

him, by reason of his mere failure to disaffirm it on coming of age, when there has been no clear and positive act of affirmation, short of the period prescribed as a bar by the statute of limitations, in cases to which the statute applies.

4. *Mortgage for advances construed, as to debts included.*—A mortgage given for advances and supplies necessary to make a crop, as evidenced by a note falling due on the 1st October, but containing a stipulation that, if the mortgagees "shall advance or furnish any further supplies, over and above the amount of said note, this instrument shall stand as security for the same, as fully as if included in said note," includes and secures such additional advances, after October 1st, as were necessary in gathering the crop.

5. *Verbal mortgage; misjoinder.*—A mortgage for advances being given by two persons jointly, either one of them might, before the present statute was enacted (Code, § 1731), verbally agree that it should stand as security on his portion of the personal property for further advances; but such separate agreement can not be enforced in a joint action against the two mortgagors, the question of misjoinder being properly presented.

6. *Estoppel by forthcoming bond.*—A forthcoming bond having been given by the plaintiffs in detinue, which recites that the defendant in the suit failed and neglected, "for the space of five days from the taking of said property into possession by the sheriff, to give bond and take possession thereof as authorized by law;" they are estopped from showing, on the trial, that the sheriff never took possession of a part of the property, but allowed the defendants to retain the possession.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by Kennon & Hill, suing as partners, and afterwards prosecuted in the name of S. H. Hill as surviving partner, against C. W. Nelms and E. G. Nelms, to recover three horses, two mules, and a two-horse wagon; and was commenced on the 28th May, 1885. The plaintiffs gave a statutory bond on the commencement of the suit, requiring the sheriff to take possession of the property sued for, unless the defendants gave bond for it as authorized by law; and on the 12th June, 1885, they executed a forthcoming bond, which recited that the defendants in the suit "have failed and neglected, for the space of five days from the taking of said property in possession by said sheriff, to give bond and take possession of said property, as authorized by law," and was conditioned that they should have the property forthcoming within thirty days after judgment, if they failed in the suit.

The plaintiffs claimed the property as the assignees of a mortgage executed by the defendants to Kennon & Bro. as partners. The defendants filed separate pleas. C. W. Nelms pleaded—1st, payment of the mortgage; 2d, "that said mortgage, after the same was executed by this defendant, was materially changed or altered, without the knowl-

edge or consent of this defendant"; and this second plea was amended, by stating the particular alterations alleged to have been made—namely, by adding the name of E. G. Nelms as a mortgagor; by changing the amount of the secured note and debt from $900 to $1,000; by changing *I* to *we*, *my* to *ours*, &c., so as to make it appear that it was executed jointly by both of the defendants. To this second plea, as amended, the plaintiffs demurred—1st, "because it does not aver that said alterations were made after delivery to the mortgagee;" 2d, "because it does not aver that said alterations were made by the mortgagees, or by [their] knowledge or consent." The court overruled the demurrer, and issue was joined on the plea. E. G. Nelms pleaded—1st, that he was under twenty-one years of age when the mortgage was executed; 2d, *non detinet.* To the plea of infancy, while joining issue thereon, the plaintiffs replied specially—1st, that said Nelms, "after he attained his majority, failed to disaffirm said mortgage;" 2d, that he "ratified said mortgage, by afterwards agreeing to pay the debt secured thereby;" 3d, that, after attaining his majority, "he continued to trade with plaintiff, with the understanding and agreement that such purchases were secured by said mortgage, and, knowing that plaintiff was selling him merchandise with the understanding that said mortgage was in force, continued to make such purchases." The court sustained a demurrer to the 1st replication, but held the others sufficient. The defendant then rejoined to said replications, that the mortgage and note were given for advances to make a crop under the statute (Code, 1876, §§ 3286-8), and "that the ratification of the same was not in writing, nor recorded within the time prescribed by said statute." To this rejoinder the court sustained a demurrer.

On the trial, the plaintiff offered the mortgage in evidence, which showed on its face the several alterations alleged to have been made in it; but the evidence was conflicting, as to the time at which these alterations were made. The plaintiff's witnesses, one of whom wrote the mortgage, and was a subscribing witness to it, testified that both of the defendants signed it the same time, and that the alterations were made before it was signed; while C. W. Nelms testified that the mortgage was for $900 when he signed and delivered it, and that he knew nothing of the changes made in it until E. G. Nelms informed him, two weeks or more afterwards, that he had also signed it, and had put "his horse

in;" and the testimony of E. G. Nelms was to the same effect. The court charged the jury in reference to this evidence, on request of the defendants, "that if they found from the evidence that the mortgage was materially changed, without the consent of C. W. Nelms, the presumption arises that it was made by the payees, and the burden is on plaintiff to prove that C. W. Nelms assented thereto." To this charge the plaintiff excepted.

The mortgage purported to be given for advances to make a crop during the year 1880, as evidenced by the mortgagors' note for $1,000, which was payable the 1st October; but it also contained a provision in these words: "It is further agreed that, if the said Kennon & Brother shall advance or furnish the said C. W. Nelms any further supplies, over and above the amount of said note, this instrument shall stand as security for the same, as fully as if included in said note." There was evidence showing that further advances and supplies were furnished, and that a balance of nearly $500 was due at the end of the year; "but a portion of these supplies were obtained after 1st October." The plaintiff asked the court to charge the jury, "that said mortgage may secure advances or supplies made after the law-day of the mortgage;" which charge the court refused to give, and the plaintiff excepted.

"C. W. Nelms was asked by plaintiff, on cross-examination, if he had any thing to do with the control or possession of the wagon sued for, since its seizure by the sheriff; to which question the defendants objecting, plaintiff thereupon stated to the court, that he expected to show by said witness that the wagon had never been in the possession of the sheriff, nor of the plaintiffs, but had always remained in the defendant's possession. The court sustained the objection to the question, and the plaintiff excepted."

The several rulings of the court on the pleadings and evidence, and in the charges given and refused, with other matters, are now assigned as error.

W. J. SAMFORD, and J. M. CHILTON, for appellant.

GEO. P. HARRISON, Jr., contra.

SOMERVILLE, J.—The action is one of detinue for certain specific property, the title of the plaintiffs resting on a mortgage purporting to be executed by the appellees, who

were defendants in the lower court. There is evidence tend-
ing to show that a material alteration was made in the amount
of the mortgage debt, by changing it from nine hundred to
one thousand dollars, and that the name of E. G. Nelms was
added as one of the mortgagors, after the execution of the
paper, and without the consent or knowledge of C. W. Nelms,
also a mortgagor. The second plea of the defendant E. G.
Nelms substantially averred these facts, and the court held
it sufficient on demurrer.

1. It was not necessary for the plea to aver, in express
words, that these alterations were made after *delivery* of the
mortgage. The averment, that it was done after the instru-
ment was *executed*, was sufficient. This implies that it was
after *delivery*. The execution of a conveyance ordinarily
includes its signing, sealing and delivery, or the doing of
every formal thing necessary to complete or carry it into
effect.—1 Rapalje's Law Dict. p. 478, "*Executed,*"

2. Nor was it necessary to aver in the plea that the altera-
tion was made by the plaintiffs, or with their knowledge or
consent. It is sufficient to state that the change was made
after the execution of the paper, and without the knowledge
or consent of the defendants; which imports that it was done
after delivery, and, consequently, while in the custody and
possession of the plaintiffs, who were the grantees in the
instrument. The alteration appeared on the face of the
paper, and was obviously so material and beneficial to the
mortgagees as to be suspicious in its nature. This fact, ac-
cording to the better rule, cast on the plaintiffs, as holders,
the burden of removing the suspicion, by showing that it
was made by a stranger, without their knowledge or leave,
or to otherwise satisfactorily explain the alteration. If made
before the completion of the instrument, or with the consent
of the party to be charged under it, this would be a sufficient
explanation. The force of the plea is to deny, *prima facie*,
the right of the plaintiffs to claim any legal right under the
altered mortgage, without first so explaining the suspicious
fact of alteration as to rebut the implication of its having
been fraudulently made.—Stephens' Dig. Law Ev. (Rey-
nolds), pp. 119–20, Art. 89; 1 Greenl. Ev. (14 Ed.), § 564,
note 1; 3 Randolph Com. Paper, § 1784; 1 Amer. & Eng.
Encyc. Law, pp. 512–13; *Barclift v. Treece*, 77 Ala. 528.

The demurrer to this plea was properly overruled.

3. Where an infant, during his minority, has made a
deed or mortgage, his mere failure to disaffirm the convey-

[Hill v. Nelms.]

ance on coming of age, without some positive and clear act of affirmation, will not amount to a ratification of the conveyance. "The reason is, that by silent acquiescence he occasions no injury to other persons, and secures no benefit or new right to himself. There is nothing to urge him, as a duty towards others, to act speedily. Language, appropriate in other cases, requiring him to act within a reasonable time, would become inappropriate. He may, therefore, after years of acquiescence, by an entry, or by a conveyance of the estate to another person, disaffirm and avoid the conveyance made during his infancy."—2 Greenl. Ev. (14th Ed), § 366, note on p. 359. In such case, it seems to be settled, that no passive acquiescence, unconnected with affirmative acts, will effect a ratification, short of the statutory period of limitations, where there is room for the operation of the statute. *Toby v. Wood*, 25 Amer. Rep., note, and cases cited on p. 31; *Eureka Co. v. Edwards*, 71 Ala. 248; *Voltz v. Voltz*, 75 Ala. 555; 3 Brick. Dig., p. 563, §§ 10–12; *Philips v. Green*, 13 Amer. Dec. 124, *note*, p. 131; *Flexner v. Dickerson*, 72 Ala. 318.

The demurrer to the plaintiffs' second replication to E. G. Nelms' pleas was based on the idea, that mere acquiescence, or a failure to disaffirm the plaintiffs' mortgage by some positive act of repudiation, was a legal ratification of it. This was an erroneous view of the law, and the court properly overruled this demurrer.

4. The court erred in construing the mortgage as not including any debt for advances or supplies created after October 1st, 1880—the law-day of the instrument. It expressly provides that, if the mortgagees "shall advance or furnish C. W. Nelms any further supplies [additional to those for which the note was given], this instrument [or mortgage] shall stand as security for the same as fully as if included in said note." The note and mortgage were executed in April of the year 1880, and the supplies gotten by the mortgagors were obtained for the declared purpose of making a crop. Whatever supplies or advances, therefore, which were shown to have been obtained to aid in *making* the crop of the current year—that is, in planting, cultivating and gathering it—must be construed to come within the terms of the mortgage.—*Collier v. Faulk*, 69 Ala. 58; *Lovelace v. Webb*, 62 Ala. 271.

5. Any verbal agreement, made between the holders of the mortgage and *either* of the defendants, that the mortgage

[Columbus & Western Railway Co. v. Bridges.]

should cover or include other debts, created after the year 1880, would be good as a verbal mortgage on the property of that one of the mortgagors, who entered into such an agreement. Each mortgagor had a right severally to bind his own property, by enlarging the legal operation of the security. Section 1731 of the present Code, prohibiting verbal mortgages, was not then in force, and can have no bearing on this case —Code, 1886, § 1731; Acts 1884–85, p. 93. If the contract of mortgage, however, was a several, and not a joint one, on the part of the defendants, a joint action could not be maintained on such several contracts, the question of misjoinder being properly presented.

6. The plaintiffs were estopped from showing that the wagon sued for had not been seized by the sheriff, or had not gone into their possession, under the forthcoming bond executed by them. The bond recites its seizure by the sheriff under the writ of detinue in the case, and is conditioned on the delivery of the wagon and other property by the obligors to the defendants, on the failure of the plaintiffs in the suit. The necessary implication is, that the sheriff discharged his duty by taking the property into his possession, and delivering it to the obligors in the bond.

We need not pass upon the sufficiency of the verdict, as, upon another trial, the irregularity pointed out can be corrected, so as to conform to the requirements of the statute. Code, 1886, § 2719.

Reversed and remanded.