# American Freehold Land Mortgage Co. v. Dykes.

### Bill in Equity to Foreclose a Mortgage.

1. *Ex parte certificates; not depositions, and inadmissible in evidence; not provable viva voce.*—*Ex parte* certificates are in no sense depositions, but are purely hearsay testimony, and upon objection are not admissible in evidence, nor are such certificates such documentary testimony as may, by rule 66 of chancery practice, be proved *viva voce* at the hearing.

2. *Contracts of infants; ratification.*—The contract of an infant, whether executed or executory, being voidable merely and not void by reason of the infancy, is subject to ratification after attaining majority, without any new consideration; and any declarations or acts by the infant, after arriving at full age, which clearly recognize the existence of the contract as a binding obligation, will constitute a ratification.

3. *Same; repudiation of contract by infant.*—If, after the execution of a contract by an infant, he has, during his minority, wasted or consumed the consideration which he received for his contract, he is not required, either in law or in equity, to refund it or its equivalent in money, or to place the other party *in statu quo*, as a condition precedent to the avoidance of his contract; but, if upon attaining his majority the infant yet retains what he received by virtue of his contract, or any substantial portion thereof, or the proceeds thereof, he can not repudiate or disaffirm his contract except upon condition that he restores or abandons to the other party that portion of the consideration received which remains in his possession; and if he interposes his disability as a defense to an action at law or in equity, he can be required on demand or suit to account for so much of the consideration as he retained and held under the contract until he reached his majority.

4. *Same; ratification by silent acquiescence.*—When an infant has parted with the property, or has used or consumed during his minority all of the consideration received by him under a contract made by him during minority, delay in making his election to disaffirm his said contract neither benefits him nor injures the other party, and silent acquiescence unconnected with affirmative acts, for a period short of the statutory bar, in cases to which the statute applies, will not amount to a ratification; but if, upon attaining his majority, he still retains what he received by virtue of his contract, or a substantial portion thereof or the proceeds thereof, he must, within a reason-

[American Freehold Land Mortgage Co. v. Dykes.]

able time under all the circumstances, give notice in an appropriate manner of his election to disaffirm his contract; and if he does not do so, but retains the consideration received, using and enjoying it as his own, his conduct will constitute a ratification by acquiescence.

5. *Same; same; no ratification in part.*—There can be no such thing as a partial ratification of a contract. The contract must be avoided or affirmed as an entirety; and if an infant, upon reaching his majority has effectually ratified in part a contract made by him during minority, such ratification will be treated as imparting validity and binding efficacy to the entire contract and to all its terms.

6. *Same; same; retention of land as a part of the consideration of the contract.*—Where an infant borrows money, and gives a mortgage on land to secure the payment thereof, and a part of the money so obtained is used, as provided by the application for the loan, to pay the purchase price for a part of the land conveyed in said mortgage, on which land the amount so due and paid was a lien or incumbrance, such land will be treated as a part of the specfic consideration received by the infant for the mortgage contract; and the retention of the land by the infant, using and enjoying it after attaining majority, constitutes a ratification of the entire mortgage contract, rendering it a binding obligation for the whole amount of the mortgage debt.

7. *Same; ratification not affected by coverture.*—Under the constitutional provision relating to the ownership of property by married women (Constitution of 1875, Art. X. § 6) a married woman may purchase property, and being capable of purchasing property, she may also ratify a purchase previously made; and the fact of her coverture does not affect a ratification by a married woman, after attaining her majority, of a purchase made while she was an infant.

8. *Same; agreement to pay commissions not ratified by the ratification of a mortgage contract.*—An agreement by an infant to pay commissions for obtaining a loan, being a separate contract and made at a different time from the contract with the lender, is not ratified by the ratification by the infant, after attaining majority, of the loan contract.

9. *Bill to foreclose mortgage; when infancy is pleaded to avoid the defense on the ground of ratification, the bill must be amended.*—Where a bill, filed to foreclose a mortgage, merely avers the execution of the mortgage and a default in the payment of the debt secured thereby, and infancy is pleaded as a defense, the complainant, to be entitled to a decree on the ground of ratification, must plead by amendment of the bill the facts constituting the ratification relied on to avoid the defense.

APPEAL from the Chancery Court of Dale.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellant, the American Freehold Land Mortgage Company, Limited,

against Mattie O. Dykes, Thomas A. Dykes, her husband, and the Loan Company of Alabama. The facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, the chancellor decreed that the complainant was not entitled to the relief prayed for in its bill, and ordered that the original bill and cross bill be dismissed without prejudice. The complainant and the Loan Company of Alabama appeal from this decree, and assign the same as error.

PETTUS & PETTUS and M. E. MILLIGAN, for appellant. 1. In this State, it has long been the settled rule that the contracts of an infant, whether simple contracts or deeds, are not void but only voidable, and in courts of law, where an infant buys personal property on credit, and controls and uses that property or disposes of it after he is twenty-one, he will be bound by his contract to pay it. The rule we take to be this: If the infant, after he arrives at age, is shown to be in possession of the consideration paid him, whether it be property, money or choses in action, and disposes of it so that he can not restore it or retains it for a reasonable length of time after attaining his majority, this amounts to an affirmance of the contract. So likewise, if it be shown that he has the power to restore the thing that he has received, he cannot be allowed to rescind without first making restitution. But if, as in the case before us, the consideration paid was money, and there is no proof that he was possessed of the money so obtained—*either actually or constructively*—after he attained his majority so as to be able to restore it to the purchaser, the infant shall not be required in a court of law to re-pay the amount he received, as a prerequisite to an avoidance of his deed by suit for the amount. When he succeeds in recovering the land it works a destruction of the contract, and according to the more modern authorities, which we are disposed to consider as correct, the purchaser who has lost the land may sue for and recover the money ; and especially would this action lie in a case like this, where the purchaser was induced to enter into a contract upon the false representation made by the infant, that he was of full age and consequently competent to contract. We would not be understood as intimating that if the infant sought a rescission in a court of

equity he would not be required to refund the purchase money whether he had disposed of it or not before he arrived at lawful age.—*Shropshire v. Burns*, 46 Ala. 108; *Manning v. Johnson*, 26 Ala. 446.

2. There is a tendency in equity, however, to hold an infant responsible for any contract that he may have induced by his representations as to his age, especially where his appearance bears out his assertions.—20 Amer. & Eng. Encyc. of Law, 671–2; *Clare v. Bedford*, 13 Vin. Abr. 536–7; *Campbell v. Ridgly*, 13 Vic. L. R. (Australia) 701; *Overton v. Bannister*, 3 Hare 503; *Hays v. Parker*, 41 N. J. Eq. 630; *Schmitheimer v. Eiseman*, 7 Bush (Ky.) 298; *Baker v. Stone*, 136 Mass. 405; *Brantley v. Wolf*, 60 Miss. 420; *Ferguson v. Bobo*, 54 Miss. 121.

3. It has been repeatedly decided that if an infant purchases real estate and at the same time mortgages the same to the vendor to secure the purchase-money, and after he arrives at full age ratifies his purchase by retaining possession of the real estate an unreasonable time, this will amount to a ratification of the mortgage, and the infant will be liable on his mortgage notes.— *Robbins v. Eaton*, 10 N. H. 562; *Lynde v. Budd*, 2 Paige 191; *Bigelow v. Kinney*, 3 Vt. 353; *Richardson v. Boright*, 9 Vt. 368.

4. The retention of property, whether real or personal, after he arrives at full age and giving no notice of an intention to disaffirm, is of itself a ratification of the contract, and will bind him to the payment of it.— *Boody v. McKenney*, 23 Me. 517; *Boyden v. Boyden*, 9 Metc. 519; *Alexander v. Heriot*, 1 Bailey 223; *Eubanks v. Peak*, 2 Bailey 497.

5. In *Ferguson v. Bobo*, 54 Miss. 133, the court, after quoting largely from decisions of the law courts, says: "Turning from courts of law to those of equity, we find the law of estoppel as applicable to contracts of infants, on a much more satisfactory and clearly defined footing. From the earliest times it has been held that infants will be estopped by a court of chancery from asserting their title where either by their silence or by their active interference they have entrapped third persons into purchasing it from others, or into advancing money upon it."—*Kilgore v. Jordan*, 17 Texas 341; *Savage v. Foster*, 9 Mod. 35; 1 Story's Eq. Juris., § 385; *Hall v. Timmons*, 2 Rich. Eq. 120; Herman on Estoppel, 416.

M. SOLLIE and W. D. ROBERTS, *contra*.

HEAD, J.—The bill was filed on the 24th day of December, 1892, in the Chancery court of Dale County, and had for its purpose the foreclosure of a mortgage, executed by Mattie O. Dykes and her husband on the 7th day of October, 1890, upon her lands, to secure the sum of twenty-three hundred dollars, loaned by the complainant to her.

The bill alleges that Mattie O. Dykes applied to the Loan Company of Alabama, to negotiate a loan for her upon said lands ; that said company placed the loan with the complainant; that the notes gi en for the money, and the mortgage given to secure same were executed and delivered to the complainant, and that the money was paid over to one Manghen, the agent and attorney of the borrower. The bill also alleges that along with the delivery of the notes and mortgage, the husband of the borrower, Thomas A. Dykes, made and delivered an affidavit, to the effect that his wife had a perfect and indefeasible title in fee simple to the real estate described in t e mortgage ; that the same was free from incumbrances, except the mortgage of complainant; that said mortgage was valid in law and in fact, and that it was a first lien upon the premises. The bill also alleges, that these representations were made for the purpose of obtaining the loan, for the security of which said mortgage was executed.

The bill then alleges, that Mattie O. Dykes and Thos. A. Dykes "are each over the age of twenty-one years," and shows a default in the payment of the mortgage debt, which, according to the terms thereof, authorized a foreclosure.

Mattie O. Dykes and her husband were made parties defendant, as was also the Loan Company of Alabama, which corporation the bill shows took a second mortgage on the same lands to secure its commission for negotiating the loan. The Loan Company of Alabama filed an answer and cross-bill, seeking the foreclosure of its mortgage, admitted by it to be subordinate to that of complainant. The other defendants answered ; the said Mattie O. Dykes setting up by way of plea, that she "was an infant under the age of twenty-one years on the 7th day of October, 1890, at the time of the execution of said notes and mortgage described in said original

bill." There was an agreement of counsel, "that the chancellor in passing on the facts in this case will consider any legal exception that could be interposed to any exhibit, attached to the bill, answer or any deposition of any witness, or to any of the evidence, the same as if it had been filed," and this agreement was included in the note of submission.

When the application was made, Mattie O. Dykes owed one James $700, the whole purchase price of a part of the lands, which was an incumbrance or lien, at least upon such part; but whether it was a vendor's lien or mortgage, does not appear. The application states that the money was to be borrowed to pay off this incumbrance , and a mortgage to one Clark, and the testimony shows without dispute, that of the amount procured and paid over to Manghen, $700 went to James to pay the purchase price of that part of the lands bought of him; $1,300 was paid to Clark to satisfy his mortgage; $200, was handed the said Mattie O. Dykes, which she paid to field hands on her place, and Manghen retained $100.

The record contains what purports to be an affidavit of Thomas A. Dykes, the husband, containing the statements, in reference to it alleged in the bill. These allegations were denied by the answer and there was no proof that he ever made that affidavit; nor is the affidavit shown by the note of submission to have been offered in evidence. It was not shown that any one of the affidavits above referred to, were ever presented to the complainant, or that the complainant relied thereon in paying over the money. It is testified by Nelson that what purported to be an affidavit, called the final affidavit, was sent to the Loan Company of Alabama along with the notes, and a certificate of the probate judge showing recording of the mortgage, but it is not shown what this final affidavit contained, nor that it ever passed beyond the Loan Company, which, as far as the record shows, was only the borrower's agent.

On final hearing the chancellor dismissed the original and cross bill without prejudice, and the Mortgage Company and Loan Company both appeal.

We have carefully examined the evidence adduced in support of the plea of infancy, and unless we reject the positive testimony of the father and mother of the prin-

cipal defendant, as well as that of herself and husband, we could not find in favor of the complainant on this issue of fact. The only dispute on this point, seems to have been whether Mattie O. Dykes was born on the 23d day of February, 1869, or on the corresponding day in 1870, and hence whether she was some months over, or some months under, the age of twenty-one years, when the notes and mortgages were executed to the Mortgage Company and to the Loan Company. In such a case as this, the evidence will always be closely scrutinized, in order to determine whether the defense of infancy has been dishonestly devised to defeat an honest debt, or whether in point of fact, the party pleading the disabilty was under lawful age, at the time the contract was made, and hence entitled to avoid the engagement. The defense is one which the laws allows, except in certain well recognized cases; and if sustained by that measure of proof which reasonably satisfies an impartial mind of its truth, it becomes a plain duty to give effect th: reto, unless it is overcome upon some ground, alleged and proven, which the law declares sufficient to avoid the plea. Besides the positive testimony of the four witnesses named, it appears that the written application for the loan, made in the name of Mattie O. Dykes by her husband on the 7th day of August, 1890, stated her age at that time as twenty years. This is a potent circumstance tending to show, if indeed it does not conclusively establish, that the subsequent assertion of the defendant's minority in October, 1890, was not an afterthought.

The complainant took the deposition of no witnesses upon the question of the age of said female defendant, and upon this issue of fact, it relies entirely upon what purports to be affidavits of Mattie O. Dykes and of her father, Absalom Payne, made before J. W. V. Manghen, a notary public, on the 13th day of October, 1890, in each of which it is stated, that she was born on the 23d day of February, 1869. These supposed affidavits were not signed by the supposed affiants, but they are simply certificates signed by the notary only, in which he certifies that the supposed affiants made oath as therein stated. The note of submission shows that these socalled affidavits were offered by the complainant in evidence, and that their execution was proven. This pro-

bably means no more than that the signature of the notary public to them was proven by some person familiar with his handwriting; certain it is that no deposition was taken to establish that either of said parties actually made such affidavits. *Ex parte* certificates are not depositions, and upon objection, are not admissible in evidence. They are hearsay purely. Neither are they such documentary testimony as may, by rule 66 of Chancery Practice, be proved *viva voce* at the hearing.

While the agreement of counsel upon the subject of exceptions to testimony could not impose upon the chancellor the duty of searching out legal objections not distinctly made and called to his attention (*Binford v. Dement*, 72 Ala. 491), yet, it will be sufficient, *in support of his finding*, to prevent our treating as waived a valid objection to the use of *ex parte* affidavits. so patently inadmissible, in *lieu* of depositions, regularly taken. The chancellor doubtless did not consider them, and he will likewise disregard them in weighing the testimony. Hence we cannot find that a contradictory statement tending to impeach two of the witnesses was proven, nor that the principal defendant had made an admission against interest receivable against her as original evidence.

Manghen, the notary, was not examined, and although Absalom Payne testified for the defendant, no predicate was laid by the complainant for the introduction of contradictory statements by him; not an interrogatory having been propounded to him in reference to his supposed affidavit. The same remark applies to the examination of Mattie O. Dykes herself. We could not, therefore, in any view, treat said affidavit of Absalom Payne as an impeachment of him. Thus considered, the testimony shows, without dispute or impeachment, that the female defendant was a minor when she executed the notes and mortgage described in the pleadings.

It is earnestly contended, however, that notwithstanding her minority at the time of the transaction with the complainant Mortgage Company, she ratified her contract after arriving at the age of twenty-one years, and that by such ratification the contract is now binding upon her. This brings us, (1), to consider the facts of the case, as bearing upon this question; (2), to ascertain what are the correct principles of law applicable thereto;

and (3), to declare the consequences, which. necessarily follow, from applying the law to the ascertained facts.

It appears, without dispute and indeed from the testimony of the defendant herself, that while yet a minor she purchased 156 acres of land from one James, at the price of $700, which had not been paid when she applied to the complainant for a loan ; that she had also executed a mortgage to one Clark for $1,500, upon at least a portion of the lands described in the pleadings, and that she desired a loan from complainant for the express purpose of paying off those claims, which were described in her application as incumbrances or liens upon the lands. It was clearly understood that the mortgage of complainant was to be a first lien, and that the money furnished by it upon the mortgage security was to be applied as far as was necessary to the payment of James, for the land purchased of him, and to the satisfaction of the mortgage executed to Clark upon at least another portion of her land. And the money, to the extent of $2,000, was actually used in this way, with the knowledge, consent and concurrence of said Mattie O. Dykes, to whom James: for the $700 received by him, gave a receipt, acknowledging receipt of the purchase price of the land he had sold her. The defendant thereupon retained possession of all of said lands, including that purchased from James, and continued, without dissent or expression of dissatisfaction, to use and enjoy them as owner, after attaining her majority. She sets up in her answer in this case, that all said lands belong to her and constitute her separate statutory estate, and in her deposition, given over two years after she became twenty-one years old, she states that the lands are still in her possession and are hers. The bill in this case was not filed until nearly two years after her minority ceased, and although the husband, when possession was demanded of him by complainant's agent in December, 1892, refused to yield, stating in general terms that they had a defense, the first expression of any intention or desire by her to repudiate her contract with complainant, is found in her plea of infancy, interposed to this bill. She has never at any time sought to repudiate her purchase of the James lands. Upon these facts, the question of ratification *vel non* arises.

It may now be regarded as settled beyond further con-

troversy in this State, that, as a general rule, the contract of an infant, whether executed or executory, is voidable merely. To this there are two exceptions. His contract for necessaries is valid and binding to the extent of the just value thereof, and an appointment by him of an attorney is absolutely void.—*Flexner v. Dickerson*, 72 Ala. 318; *Philpot v. Bingham*, 55 Ala. 435. There are authorities which deny the last stated exception, but it must now be considered as firmly established in Alabama.

As a result of the voidable nature of an infant's contracts, he has the right, upon arriving at his majority, to repudiate them; so also may he, when his minority ceases, ratify and confirm them; and this without any new considerations.—*American Mortgage Co. v. Wright*, 101 Ala. 658; *Sharp v. Robertson*, 76 Ala. 343; *Shropshire v. Burns*, 46 Ala. 108; *West v. Penny*, 16 Ala. 186; *Thomasson v. Boyd*, 13 Ala. 419; *Jefford v. Ringold*, 6 Ala. 544. If the infant has, during minority, wasted or consumed the consideration which he received for his contract, he is not required, either at law or in equity, to refund it, or its equivalent in money, or to place the other party *in statu quo*. Some authorities require this, but we have adopted the rule, in accordance with reason and the great weight of authority, that to require restitution from the infant, as a condition to the avoidance of his contract, when he has, during his minority, used or consumed the thing received, so that he has not in his possession or under his control the consideration or its proceeds, would be to deprive him of that protection against his improvidence and incapacity, which the law designed.—*Eureka v. Edwards*, 71 Ala. 248; *Craig v. Van Bebber*, 100 Mo. 584, s. c. 18 Am. St. Rep. 569; *Engelbert v. Troxell*, (Neb.), 58 N. W. Rep. 852, and authorities there cited.

The right of an infant to avoid his contracts is intended, however, solely for his protection, during that period when it may be supposed he is unable from incapacity or inexperience to fully protect himself in making agreements, and was never designed to be used as a means of profit to accrue to him after he became of lawful age. So it is, that when the infant, upon reaching his majority, yet retains what he received by virtue of his contract, or any substantial portion thereof, or the

proceeds thereof, the rule is quite different, and he may not repudiate or disaffirm his contract except upon condition, that he restores or abandons to the use of the other party that which remains in his possession of the consideration received. He will not be allowed as an adult to hold and enjoy the benefit of his contract, and then escape its burdens. This would turn his disability into a weapon of dishonesty. If he comes into a court of equity to be relieved of his contract, he must tender or offer to return so much of the consideration as he actually or constructively retains, and has it in his power to return.—*Eureka v. Edwards*, 71 Ala. 257 ; *Manning v. Johnson*, 26 Ala. 446. So, also, if in disaffirmance of the contract he sues at law to recover what he parted with, all claims on his part to that which he received, would thereby be abandoned, and if in existence would revert to the other party.—*Jeffords, Admr. v. Ringgold, supra*; *Chandler v. Simmons*, 97 Mass. 508. If he interpose his disability as a defense to an action at law or in equity, he could be required on demand or suit, to account for so much as he retained and held under the contract, until he reached the age of twenty-one.—*Eureka Co. v. Edwards*, 71 Ala. 257, *supra*.

Such being the situation of the infant, with a necessary liability, upon disaffirmance, of restoring to the other party or accounting for that which he still retains of the consideration, he may and often does prefer, upon reaching his majority, to be bound by his original contract in its entirety, rather than yield up what he has received and still retains. He has the election to be so bound. He has then become an adult, capable of deciding for himself, and he must act as he prefers, under the circumstances. It is often necessary to decide when the election to disaffirm must be made, and whether it has, in the particular case, been made within a proper time.

When the infant has parted with property, and has used or consumed during minority, all of the consideration received by him, delay in making his election will neither benefit him nor injure others, because he retains nothing and need restore nothing. Hence, under, the circumstances, silent acquiescence, unconnected with affirmative acts, for any period short of the statutory bar, when there is room for the operation of the statute, will not amount to a ratification.—*Hill v. Nelms*, 86 Ala. 442,

[American Freehold Land Mortgage Co. v. Dykes.]

and authorities cited. But, on the contrary, if a case exists, calling for surrender or restitution, as when he still retains the thing received or a portion thereof, actually or constructively, then time becomes an important element, and he must, within a reasonable time under all the circumstances, give notice, in an appropriate manner, of the exercise of his election to disaffirm ; and if he does not do so, but retains the thing received, using and enjoying it as owner, his conduct will be a ratification by acquiescence.—*Boody v. McKenney*, 23 Me. (10 Shep.) 517. This results for the manifest reason that such retention, enjoyment and use as owner are incompatible with an intention to surrender or repay—the only condition upon which, under the circumstances, a disaffirmance will be allowed. Thus it is that retention and possession *vel non* by the infant of the consideration of his contract, upon reaching his majority, will exert an important, if not controlling, influence when it becomes necessary to decide upon what terms and conditions a disaffirmance will be permitted, as also when we come to consider within what time the right of election must be exercised, and by the application of this test, all our decisions and many in other States, upon the subject of the disaffirmance of contracts of infants, the terms upon which, and the time within which, the same will be permitted, may be harmonized. In *Thomasson v. Boyd*, 13 Ala. 419, we declared, that if "an infant, after he attains majority, continues in possession of lands leased to him, or which have been conveyed to him, in both instances he affirms the contract under which he is in possession." This has been many times so decided, and the rule is applicable to purchases of personal and real property alike.—*Henry v. Root*, 33 N. Y. 526, and authorities there cited. The infant can not ; on attaining full age, hold on to the purchase and avoid the payment of the purchase money.—*Kline v. Beebe*, 6 Conn. 494 ; *Boyden v. Boyden*, 9 Met. (Mass.) 519 ; *Chesshire v. Barrett*, 4 McCord 241 ; *Lynde v. Budd*, 2 Paige 191 ; *Dana v. Coombs*, 6 Greenl. (Me.) 89 ; *Langdon v. Clayson*, 75 Mich. 204 ; *Young v. McKee*, 13 Mich. 552 ; *Robbins v. Eaton*, 10 N. H. 562.

Ratification may be made by an express promise, as also by such affirmative acts as selling, mortgaging, or converting to his own use, after attaining majority, the

property purchased or procured, or by paying the interest on the debt contracted, as in *Mortgage Co. v. Wright*, 101 Ala. 658, *supra*. Such acts evidence a clear and distinct intention to affirm the validity of the contract, and in such cases the question of time is immaterial. It is equally well settled that a retention and enjoyment, after attaining majority, of the property purchased, as owner will in the absence of dissent, within a reasonable time, operate as a complete ratification.—*Boody v. McKenney*, 23 Me. (10 Shep.)517, *supra*. Nor can there be any such thing as a partial ratification. The contract must be avoided or affirmed as an entirety. If the infant has ratified the contract in part, in any of the ways indicated, it will be treated as imparting validity and binding efficiency to the entire contract and to all its terms.—*Aldrich v. Grimes*, 10 N. H. 194; *Overbeck v. Heermance*, 1 Hopk. Ch. 337, s. c. 14 Am. Dec. 546.

Applying these principles to the facts of the case, we find that Mattie O. Dykes did not receive in person, and it was not intended she should receive the $700, paid to James, for the land purchased from him. Without doing violence to the form or substance of the transaction it may with truth be said, that the *land* was the specific consideration received by her for her mortgage contract with the complainant to the extent of $700; or to state the transaction in another form, it may be said, that the land represented the *money advanced by complainant*, to that extent, and, retaining the land, that she remained in constructive possession of a large portion of the consideration of the mortgage, after reaching her majority. The complainant, paying off the James mortgage or purchase money lien, would, under the facts of this case surrounding that payment, succeed, in equity, to James' security, and retention of the land by Mattie Dykes, after majority, would be in recognition of this equitable right of the complainant. That land she has kept, used and claimed for nearly two years after she became twenty-one years old, and even at a later period claimed it was hers. We are quite clear that she did not disaffirm within a reasonable time, and that she has ratified her purchase of that land, and also the contract with the complainant by which the purchase money was paid to James. This operated as an en-

tire ratification of her mortgage, and it is now binding upon her for the whole amount.

In this view it makes no difference whether the Clark mortgage was a valid lien on her lands or not. Complainant loaned the money to her to pay that obligation which she recognized as valid, and if it posessed any infirmity, as having been given for her husband's debt, the complainant had no notice or knowledge thereof. Neither does it matter that she used $200 in paying field hands, nor that Manghen retained $100. All of those sums were procured under a single contract, and we can not hold that she has ratified a part only of the agreement. She had the election to surrender the James lands, and this might have entirely relieved her of her obligation. We must presume she had a good reason for not doing so, and that she preferred to pay her entire mortgage debt, rather than surrender that land. At all events, upon well settled principles of law we are not authorized to disregard, we must hold, as we do, that having ratified in part she has elected to affirm all the provisions of her contract and to be bound for the full amount of the mortgage debt.

In this conclusion we are not only supported by well settled legal principles, and what is even better, by sound morality and honesty, but also by the very similar case of *Langdon v. Clayson*, 75 Mich. 204. There a married woman under twenty-one years old purchased land and agreed to pay an outstanding mortgage as a part of the purchase price. To get an extension of the time she borrowed money from another and gave a mortgage on the land to secure the amount, using it to discharge the debt secured by the assumed mortgage. After arriving at age she kept the land for more than a year, enjoying the benefit thereof. The court held that she had not only ratified the purchase, and her agreement to pay the outstanding mortgage, but also the manner in which she dealt with that lien and in consequence the mortgage she gave in lieu thereof. Nor can the defendant escape the result we have declared, upon the plea that she is and was a married woman. Under our constitution a married woman may purchase property, her right to disaffirm the purchase on account of her converture being now abro-

gated in this State.—*McAnally v. Heflin*, 105 Ala. 525. If she may purchase, so also may she ratify a purchase previously made.

Her agreement to pay the loan company for securing the loan was a separate contract, made at a different time, and upon that she is not bound, unless in point of fact, she was of lawful age when she made that agreement.—*Tunison v. Chamblin*, 88 Ill. 378.

The next question which arises is one of pleading, and requires us to decide whether there are sufficient allegations in the bill to authorize the relief to which we have declared complainant is entitled on the facts.

The bill is in the simplest form for the foreclosure of a mortgage. It alleges the execution and delivery of that instrument, and the notes, the payment of the money and the default. It did not, when filed, allege any of the facts, which we have declared constituted a ratification nor was there any amendment, introducing them into the case. Although ratification validates the contract, as between the parties, *ab initio*, and the same may be declared on without noticing the ratification (*West v. Penny*, 16 Ala. 186), yet it is settled that where infancy is pleaded the facts constituting ratification are in avoidance of the plea, and must be introduced into the pleadings, in actions at law, by a replication.—*Fant v. Cathcart*, 8 Ala. 725; *Fetrew v. Wiseman*, 40 Ind. 148. Under our system of equity pleading it is not necessary to traverse matter of defense, since our statute silently makes up an issue upon the facts alleged in the answer, (Code, § 3444; *Forrest v. Robinson*, 2 Ala. 215); but this does not dispense with the necessity of alleging, in avoidance of a sufficient plea, sustained by the evidence, those facts which are relied on to overcome the defense. If it becomes necessary to avoid matter set up in the answer by new matter, it should he introduced by amendment of the bill.—*Smith v. Vaughan*, 78 Ala. 201; *Lanier v. Hill*, 30 Ala. 111; Story's Eq. Pleadings, § 878. This is in accordance with our oft repeated declaration that appropriate allegations are as essential to the procurement of relief as adequate proofs. It is always matter of regret when a record is in such condition that a party may not receive that measure of relief which justice seems to demand, but we cannot disregard well settled rules of pleading which are necessary to an orderly

administration of justice.—*Thompson v. Campbell*, 57
Ala. 183, 190. The complainant should have amended
its bill, and thus presented the issue of ratification. This
could have been done by appropriate alternative aver-
ments, without necessarily admitting that defendant was
in fact an infant, since the complainant would be entitled
to the same relief whether it proved a contract made by
an adult, or a ratified contract made during infancy. In
all the numerous cases we have examined on the subject
of ratification, there were appropriate pleadings pre-
senting the facts which were relied on to defeat the de-
fense of infancy, with the exception of two decisions in
Code States, both of which, conceding that ratification
was matter in avoidance of the plea of infancy, rested
their conclusions upon the peculiar language of the Code
of Civil Procedure.—*Stern v Freeman*, 4 Metc. (Ky.) 309;
*Hodges v. Hunt*, 22 Barb. 150. This will clearly appear
from the language used in the Kentucky case, where the
court says : "The question is whether or not under the
old practice, the plaintiff could reply a ratification of the
contract, in avoidance of the plea of infancy. If he
could, he may, under the Code, prove the ratification
without a reply and without setting it forth in an
amended petition."

The chancellor was not authorized, in the absence of
appropriate allegations in the bill, to grant complainant
relief upon the ground of ratification—the only one which
the evidence sustained—and hence a dismissal without
prejudice was the aspect, most favorable to the com-
plainant, which he could properly give his decree, ren-
dered in term time.—*Gilmer v. Wallace*, 75 Ala. 220;
*Olds v. Marshall*, 93 Ala. 138. His decree, therefore,
dismissing the bill without prejudice, was proper and
must be affirmed.—*Munchus v. Harris*, 69 Ala. 506.

It has been argued that complainant is entitled to re-
lief upon the ground of a supposed *estoppel in pais* aris-
ing out of a false representation or fraudulent conceal-
ment by the defendant, as to her age. The facts do not
justify us in authoritatively deciding the question of law
involved in this contention, nor does the bill make a case
for its application, even if appellant's argument on this
line could be adopted in any event. In view of our con-
clusion on the other feature of the case, it is not likely
this question will be again presented, if there should be

further litigation between the parties. We may say, however, that as far as our investigation has extended, the great weight of authority seems to be in accordance with the rule declared in *Sims v. Everhardt*, 102 U. S. 300, which holds against the appellant's contention, upon this proposition.

Affirmed.

HARALSON, J., not sitting.