PER CURIAM.
This case is on appeal after remand from this Court’s opinion in Cross v. Rudder, 380 So.2d 766 (Ala.1980), after application for rehearing.
The Plaintiffs below brought suit November 1, 1968, in the Circuit Court of Jackson County, Alabama, seeking to set aside certain guardian’s sales of properties of plaintiffs’ two deceased uncles who had been under guardianship and to require an accounting from the guardian and the purchasers of the property for the rents and profits therefrom. Named as defendants were the guardian and her children, who, along with the guardian, then owned all of the properties of the wards, having acquired them at private guardian’s sales. All sales made by the guardian had been ordered by the circuit court. Different guardians ad litem were appointed by the circuit court to represent and protect the interests of the wards at each sale. The prices paid were determined by the guardians ad litem and were subsequently approved by the court.
Also named as defendants were the cross-plaintiffs below who were purported to be the children of one of the wards and nieces and nephews of the other ward. These defendants cross-claimed against the other defendants to set aside the sales and to obtain an accounting.
The circuit court entered an order declaring the cross-plaintiffs to be the heirs of the wards but denied all other relief.
This Court on appeal reversed the trial court’s decision pertaining to the setting aside of the deeds in question and affirmed the trial court’s decision that the cross-plaintiffs were the heirs at law of the wards. We then reversed and remanded the cause for the trial court to vest the property of the ward Charles Macklyn Cross in the appellants and to vest the property of *10 the ward William Clark Cross in his three sets of nieces and nephews.
The pertinent facts are set out in the opinion rendered on the first appeal.
After remand, the trial court vested the property in accordance with the remand order and held a hearing on the accounting on July 14, 1980. At the hearing, the guardian having died, the guardian’s children rendered an accounting for the years 1969 through 1979. On October 8,1980, the trial judge entered a final order approving the accounting rendered and found it to be correct. The cross-plaintiffs below filed this appeal. The heirs of the other ward, William C. Cross, did not appeal.
At the hearing, the defendants rendered an accounting for the use of the property from 1969 through 1979. The trial court held that the defendants were not required to account for the period prior to the filing of the bill in equity. It held that the defendants were required to account for the period of time from January, 1969 through December, 1979: The only evidence offered by appellants in any way in opposition to the accounting rendered concerned the issue of cash rental versus share rental and whether some timber had been cut off the land.
We affirm.
We agree with the trial court that under the facts of this case, the defendants should be required to account to the plaintiffs only from the date of the filing of the bill which ultimately resulted in the rescission of the deeds under which the defendants held the property. Petty v. Hall, 257 Ala. 145, 57 So.2d 620 (1952).
These appellants argue that the trial court should be reversed because it held that the purchasers of the lands under the deeds set aside by this Court were entitled to a credit in the accounting for the purchase price. Again, we agree with the trial court. While we condemned the action of the guardian on the first appeal in this case, we are mindful that she sought and received court approval for each sale. While her conduct was not exemplary, it should not permit the wards (or their heirs) to retain the purchase money and, at the same time, regain title to the property. In this case, it is not contended that the purchasers were bona fide purchasers without notice when they bought the property from the guardian. In Bank of Wetumpka v. Walkley, 169 Ala. 648, 53 So. 830 (1910), this Court held:
It is true the books make a distinction between a void and a voidable sale in the application of the doctrine of innocent purchaser for value, and hold that a bona fide purchaser for value under a voidable sale is protected. Shook v. Sou. B. & L. Ass’n, 140 Ala. 575, 37 South. 409. This doctrine is not to be questioned, but whether the sale is void or voidable matters not, if the purchaser is not a bona fide one without notice. The bill avers the sale of the land under a decree of the probate court, and which discloses the nature of the guardian’s title, and the bank in purchasing from him had constructive notice of the infirmities of his title — notice that the sale was procured by him as guardian, that he purchased the land at said sale, and that the ward had a right to avoid the same. Randolph v. Birmingham Co., 104 Ala. 355, 16 South. 126, 53 Am.St.Rep. 64.
While the law permits a minor to avoid such voidable sales upon a seasonable application, he is required to do equity as a condition precedent to relief. He cannot receive the benefits of a sale and also repudiate same, if he repudiates the sale, he must offer to restore whatever benefits he may have derived from said sale. Powell v. Powell, 80 Ala. 11; Marx v. Clisby, 130 Ala. 502, 30 South. 517; American Mtg. Co. v. Dykes, 111 Ala. 178, 18 South. 292, 56 Am.St.Rep. 38.
169 Ala. at 652, 53 So. 830.
This is consistent with the rule as expressed in Bogert, Trusts & Trustees § 543(V) at ¿88-90 (1978):
Where there has been self-dealing by the trustee the beneficiary may have an election as to remedies. For example, if the trustee had wrongfully purchased *11 trust property at his own sale the beneficiary may disaffirm the transaction and elect to treat the disloyal sale as a breach of trust. In such case a decree restoring the property to the trust, if the trustee has retained title to the property, would be based either on the theory of setting aside the sale transaction or of declaring the trustee a constructive trustee of the trust property. The trustee normally will be required to account for any income or profits received by him from the trust property. ... A condition precedent to the granting of this relief will be the restoration to the trustee of such portion of the price as he had paid into the trust and the release of him from any obligation to pay any balance of the price due.
We find no fault with the trial court’s approving the computations made in the accounting. As noted on the first appeal, the land involved in this litigation was operated by the guardian, now dead, as a single farm. In making the accounting, Mr. James M. Rudder, a son of the guardian, apportioned the total income and expenses to the productible acres on the lands of each individual. Likewise, since the farming on the land was done on a share basis, the acreage in a particular crop on the lands of all individuals was divided by the applicable crop-percentage. This method of computation was employed throughout since there were no separate records kept on each parcel. Based upon this method of computation, it was determined that during the period of the accounting, 51.9 percent of the total income was derived from the lands of E. M. Rudder [and TVA land leased by the guardian], 30.1 percent from the lands of C. M. Cross, and 18.0 percent from W. C. Cross’s lands. These lands were then charged with the exact same percentage of the total expenses incurred. Based on these percentages, the total net income derived from the lands the subject of this suit is $15,388.17 on the lands of C. M. Cross and $9,207.04 on the lands of W. C. Cross. The court allowed a set-off of the purchase price paid for the lands and awarded the difference to the heirs of W. C. and C. M. Cross.
This method may not have resulted in the kind of precision the law would prefer, but under the circumstances of this case, we cannot say that it was inequitable or unfair.
The trial court held that the defendants were required to account only for rents and profits actually received and found no lack of diligence on their part while the lands were in their control. Again, we are not persuaded that the trial court committed reversible error. There* was evidence that the farming operation was carried out like most farming operations in Jackson County, and there can hardly be a charge that the defendants acted any less diligently than they would have had it been their own land, since they were claiming it as their own at all pertinent times. Suffice it to say, on this issue and the issue of whether Mr. Rudder was entitled to a management fee, the evidence was conflicting. The trial judge resolved it in favor of the defendants. We cannot say he was palpably wrong.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.