## Eslava *v.* Crampton *et al.*

### *Bill in Equity to Enjoin Sale under Mortgage.*

1. *Bill to enjoin sale under mortgage; when demurrable*—A mortgagor seeking to enjoin a sale, under a power in the mortgage, on the ground of usury, must either bring the money and interest into court, or must by his offer submit himself to the jurisdiction of the court, that it may do complete equity between the parties; otherwise, his bill is demurrable.

2. *Same.*—Where the bill contains such offer, a decree of foreclosure may be made without any cross-bill; and a cross-bill being unnecessary, it is immaterial whether a cross-bill was formal, or had been properly put in issue.

3. *Receiver; when evidence as to necessity of appointing, will not be closely scrutinized.*—Where the mortgagor who agreed, in the mortgage, to insure the property, pay taxes, and keep it in repair, failed to do so, and was shown to be insolvent, this court will not closely scrutinize conflicting evidence, as to the value of the mortgaged premises, upon which a receiver was appointed.

4. *Same.*—Answers prayed to be taken as cross-bill in such a cause, whether put at issue or not, authorize the complainants in them to move for a receiver.

5. *Brokerage in addition to interest; when will not render loan usurious.* Where a loan is negotiated through a broker, who, by arrangement with the borrower, received commissions for effecting the loan, the fact that the broker allowed the lenders to share in such commissions, in order to induce them to take the loan, will not brand the transaction as usurious, when it is shown that such action on the broker's part was a mere gratuity, and not part of a scheme to avoid the laws against usury.

5. *Usury; what will not avoid.*—A mere renewal of the debt or change of securities, between the same parties, will not purge the usury; and where one shown to have already loaned money to complainant at usurious rates, takes another loan and security, which she assails as a mere renewal of the old usurious debt with change of security, he must make good his defence by clear and satisfactory proof, that the second transaction was not part of a device to avoid the usury laws.

APPEAL from Chancery Court of Mobile.

Heard before Hon. CHARLES TURNER.

The appellant, Celestine Eslava, filed her bill against W. F. Stoutz, A. E. Buck, Manuel Primo and O. L. Crampton, the appellees, and sought to enjoin a threatened sale of certain property by O. L. Crampton, under mortgages executed to him by appellant. The bill charged that the appel-

lant, some time in the year 1870, commenced borrowing money from Wm. F. Stoutz, and that during that year she borrowed various sums from him at rates of interest, varying from twenty to twenty-four per cent., and that in June, 1872, she executed a mortgage to secure said indebtedness on a certain piece of property belonging to her, known as the Walsh, Smith & Co. store.

There were two mortgages on this piece of property, and W. F. Stoutz represented to appellant that he was anxious to have the mortgage to him paid and settled, and he could borrow for her from O. L. Crampton, fifteen thousand dollars, at twelve per cent. interest—twelve thousand five hundred dollars to be paid at once and twenty-five hundred dollars shortly. The bill then charges that the appellant consented to this, and upon the report of Stoutz Bros., a firm composed of Wm. F. and F. A. Stoutz, that Crampton had loaned the twelve thousand five hundred dollars, she executed to Crumpton on the 7th day of June, 1872, a mortgage, on property other than the Walsh, Smith & Co. store, for twelve thousand five hundred dollars, and at the same time executed and delivered to Crampton three notes for forty-five hundred dollars each, said notes being nominally for the sum of twelve thousand five hundred dollars, and one year's interest at eight per cent. Both notes and mortgage had one year to run. On the 6th day of July, 1872, she executed another mortgage on the same property to Crampton for the sum of twenty-five hundred dollars, and at the same time she gave three notes for nine hundred dollars each, due one year after date, said notes being likewise for the nominal loan of twenty-five hundred dollars and eight per cent. interest thereon. The bill then charges that the mortgages do not speak the truth, and that Crampton never in fact lent more than ten thousand dollars, and the arrangement was a device and contrivance by which to obtain a better security for the debt due W. F. Stoutz, and that all parties had the notes and mortgages executed as shown above, in order to conceal the real loan then made. It is alleged that under this arrangement, five hundred dollars of the amount covered by the notes were never paid, but that the same was put in the shape of a commission to F. A. Stoutz, for negotiating said loan; that the other five thousand dollars was in fact nothing but the old usurious debt due W. F. Stoutz and secured by a third mortgage on the Walsh, Smith & Co. store, and the reputed loan of fifteen thousand was really a device on the part of W. F. Stoutz

and F. A. Stoutz, who were brothers, to secure a mortgage on the property now in controversy, in place of the third mortgage described above. Each of the mortgages to Crampton bound appellant to keep the mortgaged premises in repair, to insure the same for the benefit of the mortgagees, pay the taxes accruing, and each contained a power of sale in default of the payment of the notes secured by them. It was also alleged that under the power of sale, Crampton had advertised the property, and announced his intention to sell the same to pay the mortgage debt. Sworn answers were required, and each defendant so answered.

A. E. Buck in his answer denied any knowledge of the usurious loans to appellant by W. F. Stoutz, and alleged that he was applied to by F. A. Stoutz to loan appellant some money, to be secured by the mortgages attacked in this case; that by the consent of his wife, Ellen B. Buck, he invested money belonging to her to the extent of one-third of the loan, secured by the two mortgages to Crampton, and that he received from Crampton two notes of appellant, one for $4,500 and the other for $900; that the papers were prepared and produced signed and acknowledged by appellant, by F. A. Stoutz, who acted for her in all the negotiations in every way; that the money was paid over to F. A. Stoutz as her agent. The answer then alleged that though there are two mortgages, they are parts and parcels of one transaction, and that by express understanding with Buck and Crampton, F. A. Stoutz held back $2500 to clear an encumbrance on the property, in the shape of a tax title held by one Wilson, they being unwilling to loan the whole amount until the matter was settled; that the tax title was purchased by F. A. Stoutz as agent for appellant, and the balance of the loan was then secured by the mortgage dated on the 6th of July, 1872. He denies that there was any contrivance on his part to disguise any usurious transactions with W. F. Stoutz, or to aid him to obtain better security for his debt, and alleges that he understood at the time that out of the money paid to F. A. Stoutz, said Stoutz, acting for appellant, had paid off the old mortgage held by W. F. Stoutz, and that said W. F. Stoutz would take a third interest in the mortgages to Crampton. He denies all usury in the debt secured by the Crampton mortgages, and alleges that the notes held by his wife represent the money actually loaned and legal interest thereon, and that the transaction was *bona fide* and legal. He sets up the failure of the mortgagor to pay taxes on the mortgaged premises, or to keep

the same in repair, and insured for the benefit of the mortgagee as required to do by the mortgages, and alleges that Crampton had been compelled to pay insurance on the premises, the parties interested in the mortgages furnishing the means. He prays that a foreclosure in favor of Ellen B. Buck, if she be made a party, and a sale of the property under the direction of the court. Incorporated in his answer is a demurrer, assigning two causes: 1st, "That Ellen B. Buck is not made a party defendant," and, 2d, "For want of equity, as the complainant does not offer to pay any sum whatever, not even the money she admits to be due."

The answer of William F. Stoutz gives the same accounts of the execution of the Crampton mortgages as set forth in the answer of A. E. Buck; denies that he had any connection with the negotiations resulting in the loan secured by said mortgage, except to furnish one-third of the consideration money of the mortgages, and alleges that the transactions were in all respects legal and *bona fide*. He further denies any agreement to disguise any usurious transaction, or that the Crampton mortgages are tainted with usury, and alleges that the mortgage held by him on the Walsh, Smith & Co. store, the consideration of which he admits was money loaned appellant at twenty to twenty-four per cent. a year, "had been fully paid out of moneys paid to F. A. Stoutz by Crampton and Buck, and afterwards said money was reinvested by W. F. Stoutz in the new loan and security; that the sum so paid was credited on the books of F. A. Stoutz, to Crampton as part of the fifteen thousand dollars; that there was no connnection between the mortgage held by him on the Walsh, Smith & Co. store and the Crampton mortgages, except in investing the money received on the old mortgage in the new loan." He alleges that he did not receive the note for forty-five hundred dollars until after he had cancelled and delivered the mortgage on the Walsh, Smith & Co. store to the agent of appellant, and that he did not receive the nine hundred dollar note until a month afterwards. Attached to his answer is an account between F. A. Stoutz and appellant, marked "special account," in which F. A. Stoutz charges himself, under date of June 7, 1872, with "cash of O. L. Crampton, $15,500," and on the same day claims credit for "commissions, 4 per cent." $500, and for "cash paid W. F. Stoutz in full," $4500.

He further avers that "the original real parties in interest in said mortgages, were said O. L. Crampton, Mrs. Ellen B. Buck, wife of the Hon. A. E. Buck, and your respon-

[Eslava v. Crampton.]

dent." The breach of the conditions of the mortgages in relation to keeping the mortgaged property insured and repaired, and the taxes thereon paid, is averred; the answer then prays that the mortgages given to Crampton be foreclosed for the benefit of the parties secured by it. A demurrer is also incorporated in this answer, for want of equity, "as the said complainant does not offer to pay the sum due or any part thereof, and does not offer to pay even the sum she admits to be due."

Crampton's answer denies any knowledge of the usurious transactions between W. F. Stoutz and appellant, or of what was the consideration of the mortgage held by Stoutz on the Walsh, Smith & Co. store, and avers that pending the negotiations, which resulted in the making and delivery of the two mortgages to him, he heard that there was such a mortgage, but he was informed before said mortgages were actually made, that said mortgage was paid and cancelled, out of the money paid to F. A. Stoutz, by himself and Mrs. Buck; that W. F. Stoutz had become interested to the extent of one-third in the two mortgages to him, by reinvesting the money therein. The answer alleges that the whole transaction was negotiated by F. A. Stoutz, as the agent of appellant, and gives the same account of the execution of the two mortgages as that stated in the answer of A. E. Buck. He then denies that he was a party to any device or agreement to aid W. F. Stoutz to obtain a better security for his usurious debt, and alleges that the transactions which led to the execution of the mortgages to him were in all respects *bona fide* and strictly legal. His answer proceeds: "As to the commission of six hundred dollars allowed to said F. A. Stoutz, respondent understood at the time that said Stoutz charged commissions, which had been agreed to by said complainant, and as said Stoutz received all the money he had only to charge the commissions to his principal, as part of the money received. Said sum so charged respondent regards as reasonable." It is alleged in his answer "that the notes and mortgage of complainants are held by Manuel Primo, Mrs. E. B. Buck, and the said W. F. Stoutz, one-third each, respondent having, on the 1st of October, 1872, sold his interest to said Primo, who had no knowledge, that respondent knows of, of any of the matters alleged in said bill, concerning the negotiation of said loan and the making of said mortgages and notes.

His answer then admits that he now holds the mortgage as the trustee of the parties in interest, and alleged the fail-

ure of the mortgagor to comply with the covenants of the mortgages, as to repairs and taxes on the mortgaged premises, and as to keeping the same insured for the benefit of the mortgagees, and that by reason of her failure in this respect he had been compelled to pay taxes and insurance on the property to the amount of $469.50, which amount was furnished to him for that purpose by the parties owning the mortgage debt. His answer then avers that the mortgaged property does not exceed twenty thousand dollars in value, and that the bond given by complainant to secure the injunction in this case (which was for the sum of $500) was insufficient for the protection of the parties in interest, that the complainant is insolvent, and was wasting the rents, failing to pay taxes and suffering the property to deteriorate to their detriment, and that if she was allowed to continue in possession of the mortgaged premises and receive the rents, the property would not bring enough to secure the debts secured by the mortgage, and prayed that a receiver be appointed to collect the rents, pay taxes on the mortgaged property and keep the same in repair, until the final decision of the cause. He likewise demurred to the bill on the same grounds as the other respondents. Manuel Primo answered, setting up that he was a *bona fide* owner of two of the notes secured by the mortgages, having purchased the same from Crampton for a valuable consideration, and without notice of any of the transactions which had led to their execution. No process was issued on these answers as cross-bills. Soon after the filing of these answers the respondents moved the register in vacation to appoint a receiver, and in support of the motion filed numerous affidavits as to the value of the mortgaged premises and the solvency of the complainant. By these affidavits it appears that judgments against appellant have been returned "no property"; that various suits are pending against her, and the value of the mortgaged premises is fixed, by the persons making the affidavits, at from $15,000 to $20,000. There were counter affidavits which place a value on the property varying from $25,000 to $40,000. The register denied the motion for a receiver and an appeal was taken from his decision to the chancellor in vacation, who ordered the appointment of a receiver, who took possession of the property. An amended bill was then filed, which is substantially the same as the original in the particulars necessary to the decision in this cause and which contains the following clause: "And she says that she is ready and willing to pay whatever sum may be actually and

[Eslava v. Crampton.]

truly due to the parties severally interested in her said mortgage notes, allowing to your oratrix such abatements as she may be entitled to by law, and she tenders to pay any sum which may be found due by her to said parties in interest, and she submits herself to this court in that behalf."

The amended bill admits that Mrs. Eslava has failed to pay taxes on the mortgaged premises or to have the same insured, and that she had disposed of some of the rent notes before maturity, and makes Mrs. Buck a defendant. The appellees severally answered this amended bill, averring in the answers substantially the same facts as in their answers to the original bill. In his answer to the amended bill, Wm. F. Stoutz, in explaining how he acquired his interest in the Crampton mortgages, after stating that the usurious debt secured by the Walsh, Smith & Co. mortgage was due, and that he was pressing the appellant for a settlement, and threatened to have the mortgage foreclosed, alleges the agent of appellant informed him that he would obtain a loan and pay the same, and uses the following language: "In accordance with this understanding, said mortgage debt was paid and satisfied out of the moneys paid to F. A. Stoutz by said Crampton and Buck, and respondent then purchased with said money the note of forty-five hundred dollars, and deposited with said F. A. Stoutz eight hundred and thirty-three dollars, to invest in said note of nine hundred dollars, each having twelve months to run. Previous to said purchase and investment, the old note and mortgage of the first of February, 1871, was given up and cancelled, and was put into the possession of F. A. Stoutz for Mrs. Eslava."

The only testimony, except the sworn answer of the respondents, was the deposition of F. A. Stoutz, and in it he gives a full itemized account of his disbursements of the fifteen thousand dollars raised for Mrs. Eslava on the mortgages, he entered and claimed the following credit: "To Wm. F. Stoutz, in settlement of mortgage, $4,500."

In his testimony, F. A. Stoutz, both in direct and cross-examination, states that he received from the parties in interest on said mortgages, the amount in *cash* or its *equivalent*, and that he paid out the same by the order of the general agent of appellant. He also testified that his payment of part of his commissions to the lenders of the money, was but a gratuity on his part in his desire to accomplish the loan.

On the hearing, the chancellor was of opinion that the

[Eslava v. Crampton.]

complainant was not entitled to relief, and that the respondents were entitled to a foreclosure of the two Crampton mortgages, which was accordingly decreed, and a sale of the mortgaged property ordered. The appointment of the receiver, the decree rendered, and that the cause was not at issue on the cross-bill, are here assigned as error.

GEORGE N. STEWART, for appellant.

BOYLES & OVERALL, contra.

[No briefs came into Reporter's hands.]

STONE, J.—The case of *Rogers et al. v. Torbut et al.,* 58 Ala. 523, presented substantially the same question as that which meets us at the threshold of this. In that case, as in this, the bill was filed by mortgagors, charging that there was usury in the debt secured by the mortgage, and seeking to arrest a sale, threatened to be made under a power contained in the mortgage. In that case a question was made on the averments of the bill. We declared the rule in such case to be, " that a complainant asking such relief, must either bring the money borrowed and interest into court, or he must, by his offer, submit himself to the authority and jurisdiction of the court, so that without more, the court may compel him to do equity, as a condition upon which the relief prayed will be granted. This is the spirit, this the sense of the rule." We said also, " without this offer, the complainants would have had no standing in court, and their bill would have been demurrable."—*Branch Bank of Mobile v. Strother,* 15 Ala. 51 ; *Nelson v. Dunn,* 15 Ala. 501.

The bill in the present case, as amended, contains the following clause: " And she also says that she is ready and willing to pay whatever sum may be actually and truly due to the parties severally interested in her said mortgage notes, allowing to your oratrix, such abatements as she may be entitled to by law, and she tenders to pay any sum that may be found due by her to said parties in interest, and she submits herself to this court in that behalf." Under the rule declared in our former decisions, cited above, the Chancery Court was authorized to ascertain the amount due, and to decree a foreclosure of the mortgages, without any cross-bill whatever. So, we need not inquire whether the cross-bill in this case was formal, or had been put at issue. There is nothing in this assignment of error.

[Eslava v. Crampton.]

The answers as amended, or some of them, are prayed to be made cross-bills. Whether these cross-bills were ever put at issue or not, they authorized a motion by complainants in them, for the appointment of a receiver. Much testimony was taken by affidavit on the question of the value of the mortgaged property. Many witnesses testified to a value which would be amply sufficient to secure the debts, while many others fixed the valuation below that sum. Uncontradicted evidence establishes the following facts: That Mrs. Eslava is insolvent, owing many debts in judgment, on which there is return of execution, "no property found;" that when she executed the mortgages, she bound herself to keep the property under insurance, and the taxes paid, and she had failed to observe and keep each of these promises, and that the mortgagees had been forced to pay for the insurance, and also to pay the taxes to prevent a sale of the property. It was also shown that the property was allowed to suffer for want of repairs, and that the rent notes were disposed of, before their maturity. In view of these damaging facts, we are disinclined to reverse, or scrutinize narrowly the finding of the chancellor that the mortgage security was insufficient and insecure. He did not err in the appointment of a receiver.

In lending the money and taking the mortgage, Crampton, acting for himself and Mrs. Buck, is not shown to be guilty of the offense of usury. In the sworn answers of defendants, and in the testimony of F. A. Stoutz, it is shown that each of these parties lent to Mrs. Eslava five thousand dollars in cash, and took notes due at twelve months for that sum with eight per cent. added, making fifty-four hundred dollars each. True, this witness says that by pre-arrangement, he, the witness, as a broker, was to be paid four per cent. commissions for negotiating the loan, and relieving the property from taxes and other incumbrances; and it is shown that this fund, in whole or in part, went to the lenders. If this was a device or artifice to secure a greater rate of interest than eight per cent. *per annum*, then, it would brand the transaction as usurious. Only the testimony of F. A. Stoutz bears directly on this question. He testifies positively that such was the agreement under which he performed the services; that they were worth this sum, and that it was gratuitous on his part that Crampton and Mrs. Buck shared in this fund. There is no other testimony on this question. If this statement is not true, Mrs Eslava, or her agent Jules Eslava, could have controverted it. They have

not testified. The present record fails to show any usury in the claims of Mrs. Buck, and of Crampton, now held by Primo.

The third of the mortgage claim, held by William F. Stoutz, stands on a different footing. He had been a previous creditor of Mrs. Eslava, for money lent at usurious interest. The theory of his defense to the charge of usury is, that his older demand was liquidated with money raised from Crampton on the mortgages, and that he, William F., subsequently took a third interest in the mortgage loan. We have no doubt the parties understood the rule of law, that the renewal of a usurious contract does not purge it of the taint, and that they attempted to escape that result. The answers, and the general statement of the witness F. A. Stoutz, are to the effect that the usurious debt to Wm. F. was first paid, and that he, William F., subsequently took an interest in the mortgage loan. But when the facts are scrutinized, it is shown that this is an erroneous conclusion. It is shown in the record that Crampton and Mrs. Buck each paid or lent five thousand dollars, and only five thousand. It is no where said that William F. Stoutz paid or lent any money. F. A. Stoutz testifies that the fifteen thousand dollars were paid to him in money *and its equivalent.* He repeats this remark in his cross-examination, and never informs us in what this "equivalent" consisted. Wm. F. Stoutz, in his answer, says: "In accordance with this understanding, said mortgage debt, [the part, usurious debt to Wm. F.,] was paid and satisfied out of the moneys paid to F. A. Stoutz by Crampton and Buck, and respondent then purchased with said money the note of four thousand five hundred dollars, and deposited with said F. A. Stoutz, eight hundred and thirty-three dollars, to invest in the note for nine hundred dollars, each having twelve months to run. Previous to said purchase and investment, the old note and mortgage of the first of February, 1871, was given up and cancelled, and was put into the possession of F. A. Stoutz for Mrs. Eslava." In F. A. Stoutz' deposition, giving a full, itemized account of his disbursement of the fifteen thousand dollars raised for Eslava on the mortgages, he entered and claimed the following credit: "To Wm. F. Stoutz in settlement of mortgage $4,500.00" The theory of this defense is, that Wm. F. Stoutz, after collecting, through the money raised on the mortgages, his old usurious debt of forty-five hundred dollars, then purchased a third interest in the fifteen thousand dollars, new mortgage loan. How, "with said money,"

[Eslava v. Crampton.]

$4,500.00, collected on the old debt, Wm. F. Stoutz paid $5,000.00 one-third of the new mortgage loan of fifteen thousand, is not attempted to be explained. And yet, in W. F. Stoutz' original answer in this cause, he says " the original real parties in interest in said mortgages, were said A. L. Crampton, Mrs. Ellen B. Buck, wife of the Hon A. E. Buck, and your respondent." How Wm. F. Stoutz could be one of " the original, real parties in interest in said mortgages," on which the fifteen .thouand dollars was raised ; how part of that $15,000.00 should be used in the payment of the older mortgage debt to him of $4,500.00, and yet with that $4,500.00 so received, he should purchase his *original* one-third interest in the mortgages on which the money was raised, are questions more easily asked than answered. We feel bound to hold that as to Wm. Stoutz, this is a mere evasion of the statute against usury, by an attempted purgation of the older, tainted contract, while the real transaction was a renewal of the debt, with a change of the security.

The result of the foregoing principles is, that the decree of the chancellor, so far as its affects Primo and Mrs. Buck, must be affirmed. So far as it affects Wm. F. Stoutz, it is reversed, only as to the amount due him on the mortgage debts. The true amount to which he is entitled, is the sum or sums of money lent by him to Mrs. Eslava, with lawful interest thereon, until the making of the sale. If in the making of the loan of $1,500.00, he advanced any money beyond the old debt due him, he is entitled to that with interest. A decree is here rendered according to these principles, and the register is directed to take and report an account to the chancery court, based on these principles. The question of the confirmation of the report, and of the disposition of the surplus purchase-money, should any be found, are left open for the chancellor. We also leave open for the chancellor's consideration, the question of declaring a lien on the interest of said Stoutz in said lands, so purchased in his decree, for any balance of purchase-money found due from him. The costs of appeal to be paid by Wm. F. Stoutz.