(117 So. 301)

## BRASHER et al. v. GRAYSON. (6 Div. 46.)

Supreme Court of Alabama. May 10, 1928.

Rehearing Denied June 7, 1928.

**1. Equity ☞66—Offer to do equity is not required to be embraced in bill to remove cloud from title.**

The general requirement for offer to do equity as a condition on which equitable relief will be granted is not required to be embraced in a bill under the statute to remove a cloud from title to real property.

**2. Equity ☞66—Requirement of offer to do equity as condition on which equitable relief will be granted applies to an infant plaintiff.**

The general requirement for offer to do equity as condition on which equitable relief will be granted applies whether plaintiff be an adult or infant, for the latter has no more right than an adult to seek relief from the other and hold benefit of transaction or facts at the same time and retain the property to prejudice of those who have acted in good faith upon the transaction as valid.

**3. Infants ☞31(2)—Infant seeking to repudiate mortgage after removal of disabilities held not, under the facts, required to restore the status quo by redelivery of possession of property.**

Where father and infant son entered into agreement with another whereby, on such other paying amount owing on purchase price of lot and paying for material and labor in construction of dwelling thereon, father would convey lot to infant son who would in turn execute mortgage to such other in repayment of money advanced as purchase price and for material and labor, *held*, that, in view of infant's interest in house and lot and his money contributions thereto, it was not necessary that he restore status quo by redelivery of possession of property to such other on disaffirmance or repudiation of mortgage after his disabilities were removed.

**4. Subrogation ☞23(1)—One paying material and labor liens in construction of house held protected in court of equity under rule of subrogation.**

Under rule of subrogation, one paying for material and labor in construction of house and portion of purchase price of lot *held* protected in court of equity in his discharge of such liens.

**5. Infants ☞31(1)—Infant held entitled to disaffirm mortgage on removal of disabilities on payment by mortgagee to register of amounts paid by infant or his father.**

Where father and infant son entered into agreement with another whereby, on such other paying amount owing on purchase price of lot and paying for material and labor in construction of dwelling thereon, father would convey lot to infant son, who would, in turn, execute mortgage to such other in repayment of money advanced as purchase price and for material and labor, *held*, that, on infant seeking to disaffirm mortgage after his disabilities were removed, such disaffirmance will be permitted upon payment to register by such other of the amount that father and infant, or either, paid on purchase price of lot and for labor and material.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill in equity by B. G. Brasher against C. H. Grayson, doing business as Grayson Lumber Company, and cross-bill by respondent against complainant and Myrtle Brasher and S. D. Brasher. From a decree appointing a receiver, cross-respondents appeal. Reversed and remanded.

Fort & Jones, of Birmingham, for appellants.

To justify the appointment of a receiver, there must be a reasonable probability that the complainant will succeed ultimately in obtaining the general relief sought, and imminent danger to the property, the subject of the suit. Neither element was present in this case. Ft. Payne F. Co. v. Ft. Payne C. & I. Co., 96 Ala. 472, 11 So. 439, 38 Am. St. Rep. 109; Alderman on Rec'rs, § 49; High on Rec'rs (3d Ed.) §§ 18, 19; Palmer on Eq. (2d Ed.) 1331; Randle v. Carter, 62 Ala. 95. The disaffirmance and repudiation of the mortgage were effective; Brasher was not required to restore the status quo. Bell v. Burkhalter, 176 Ala. 62, 57 So. 460; 1 Jones on Mortg. (6th Ed.) 95; Scott v. Brown, 106 Ala. 604, 17 So. 731. There is no equity in the bill as one to enforce a mechanic's lien. There was no valid contract. Code 1923, § 8832; Copeland v. Kehoe, 67 Ala. 594; Bloomer v. Nolan, 36 Neb. 51, 53 N. W. 1039, 38 Am. St. Rep. 690; Rockel on Mechanic's Liens, p. 70; 2 Jones on Mechanic's Liens, p. 263; Alvey v. Reed, 115 Ind. 148, 17 N. E. 265, 7 Am. St. Rep. 418. A receiver cannot be appointed to aid in enforcement of a mechanic's lien, unless the statute specifically provides for the appointment. High on Receivers, § 586; Rockel on Liens, p. 630; Stone v. Tyler, 173 Ill. 147, 50 N. E. 689.

Miller & Graham, of Birmingham, for appellee.

The facts alleged are sufficient to warrant the appointment of a receiver. Jackson v. Hooper, 107 Ala. 634, 18 So. 254; Eslava v. Crampton, 61 Ala. 507; Amer. F. L. Mort. Co. v. Dykes, 111 Ala. 178, 18 So. 292, 56 Am. St. Rep. 38; Carver v. Eads, 65 Ala. 190; Goodman v. Winter, 64 Ala. 410, 38 Am. Rep. 13; Eureka Co. v. Edwards, 71 Ala. 248, 46 Am. Rep. 314; 1 Jones on Mortg. 93; Code 1923, § 8892 et seq. The contract of an infant is generally voidable merely. Amer. F. L. Mortg. Co. v. Dykes, 111 Ala. 178, 18 So. 292, 56 Am. St. Rep. 38; Freeman v. Bradford, 5 Port. 270; Slaughter v. Cunningham, 24 Ala. 260, 60 Am. Dec. 463; Manning v. Johnson, 26 Ala. 446, 62 Am. Dec. 732; Smoot v. Ryan,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

187 Ala. 396, 65 So. 828. Complainant should have offered to do equity. Eureka Co. v. Edwards, 71 Ala. 248, 46 Am. Rep. 314; Weaver v. Jones, 24 Ala. 420; Amer. F. L. Mortg. Co. v. Dykes, supra; Grider v. Amer. F. L. Mortg. Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58; Bank v. Walkley, 169 Ala. 648, 53 So. 830; Bell v. Burkhalter, 176 Ala. 62, 57 So. 460; Ex parte McFerren, 184 Ala. 223, 63 So. 159, 47 L. R. A. (N. S.) 543, Ann. Cas. 1915B, 672; McCarty v. Woodstock Ir. Co., 92 Ala. 463, 8 So. 417, 12 L. R. A. 136; Manning v. Johnson, supra; 1 Jones on Mortg. (6th Ed.) p. 93; Callis v. Day, 38 Wis. 643. There can be no such thing as a partial ratification of a contract. Amer. F. L. Mortg. Co. v. Dykes, supra; Hubbard v. Cummings, 1 Greenl. (1 Me.) 11; Kimball v. Cunningham, 4 Mass. 502, 3 Am. Dec. 230; Lynde v. Budd, 2 Paige (N. Y.) 191, 21 Am. Dec. 84.

THOMAS, J. The appeal is from a decree ordering receivership of real property as an ancillary remedy to foreclosure or enforcing equitable liens. The bill was filed by a minor, whose disabilities of nonage had been removed, to disaffirm a mortgage and have the same canceled as affecting his interest in the real property embraced therein and calling on respondent to propound his lien, title, or claim to the land.

It is averred that at the time the mortgage was executed complainant and wife were not of age; that his disabilities were removed, and immediately on the granting of that relief he disaffirmed the mortgage and so notified respondent; he prayed that respondent propound his claim and title, and asked that the mortgage be canceled as a cloud on complainant's title.

Respondent demurred, answered, and made the latter pleading a cross-bill making mortgagors and his grantor, S. D. Brasher, parties; prayed an accounting on the mortgage or lien, the same being the means of procuring the money that was used in completing the payment of the purchase price, in procuring the work and materials used in erecting the house thereon, and the discharge of materialmen's, mechanics', and workmen's liens accruing thereon; that the same were furnished and done by mortgagee under a contract with complainant (in original bill), mortgagors, and their father, who then held the superior title, and prayed that the same be declared superior liens on the property; that the mortgage evidencing a part thereof and the balance of such indebtedness and lien perfected under the statute be enforced against this land in favor of original respondent. There were special and general prayers for relief; petition for receiver of property, collection of rents, and its preservation by insurance, etc. And the petition for receiver set out the facts, the value of the property averred not to be adequate security for the indebtedness as compared to the amounts, the lack of insurance, and the attempt at disaffirmance after law day of the mortgage and demand and refusal of payment, and failure to deliver on demand the possession of the premises after the offer by Grayson to pay mortgagors all of the money which had been paid by them (respondents to cross-bill), or either of them, in part payment of the purchase price of said lot, in payment for work, labor, and material used and furnished in the construction of the dwelling on the lands.

The case for decision (as we shall see) is not in exact analogy to any one class of our cases declaring the general rules, but must be adjudged upon its own complicated special facts. The appellants B. G. Brasher and S. D. Brasher agreed with C. H. Grayson that if the latter would pay the American Cast-iron Pipe Company $300, the amount owing by S. D. Brasher to that company on the purchase price of the lot, and furnish the necessary building materials to be used in the construction of a dwelling thereon and the money to pay for the labor employed to that end, S. D. Brasher would, upon conveyance of the lot to him by his vendor, convey the same to B. G. Brasher, and the latter and wife would, by appropriate conveyance to complainant, mortgage said lot in the sum of $5,500 to secure the repayment to Grayson of said money so advanced as purchase price, material, labor, etc. It was then estimated between the three parties that the cost of the erection of said house (with the said balance of $300 to be paid on the purchase price of the lot) would not exceed the sum of $5,500—the amount of the mortgage. It is averred that Grayson paid the $300 to the American Cast-iron Pipe Company, furnished the money to the amount of, $2,998.02 for labor, and procured or advanced building materials of the price and value of $3,256.64, pursuant to said agreement; and that said sums and building materials were used in paying for said lot and the erection of the dwelling house thereon, now the subject of controversy; that the American Cast-iron Pipe Company executed its deed conveying the lot to S. D. Brasher, who, in turn, conveyed to B. G. Brasher. The latter and wife executed their mortgage on said real property to C. H. Grayson. It was at this stage, and pursuant to agreement, that Grayson paid the purchase price due to the American Cast-iron Pipe Company and thereafter furnished the labor and material to the amounts above indicated. The two deeds and mortgage were executed and delivered simultaneously with said payment of the balance of purchase price on the lot, and all was one transaction. It is not insisted that either of the Brashers had paid C. H. Grayson anything. The insistence as to B. G. Brasher was that, being an infant, he had his disabilities of nonage removed and the same day notified C. H. Grayson of his repudiation and

disaffirmance of said mortgage and contracts made with him and liability to him thereon, and instituted suit in equity to cancel the mortgage as a cloud on his (B. G. Brasher's) title, being in possession of said property after disaffirmance and repudiation of said mortgage and having failed or refused to deliver to C. H. Grayson that possession or to convey the same to the said C. H. Grayson. The latter filed his cross-bill setting up the facts, and facts showing a due compliance by him with the statute giving materialmen a lien, and offering to pay to S. D. Brasher and B. G. Brasher any and all sums which they, or either of them, have paid on the purchase price of the lot and on the cost of erecting the house thereon, and in all things to do equity; concluding with appropriate prayers for relief in several alternatives, and for general relief, and for the appointment of a receiver of the property ancillary to the proceedings in the premises.

There were several affidavits and counter affidavits touching the facts and whether the minority of B. G. Brasher was disclosed by the father to Grayson's agent; and that on one or more occasions the father and son acted in ordering material and making changes thereof; and that on one occasion the two Brashers visited Grayson's office to obtain money on or for the contract.

[1] The general requirements for the offer to do equity as a condition on which equitable relief will be granted is said to inhere in many judicial proceedings dependent on the facts of the case—where the remedy sought demanded the offer to do equity and submit without reservation to the jurisdiction of the Court of Equity in the premises. Clark v. Whitfield, 213 Ala. 441, 105 So. 200; Coburn v. Coke, 193 Ala. 364, 69 So. 574; Sims, Ch. Pr. § 441; 1 Daniel, Ch. Pr. § 441; 1 Storey, Eq. § 301; 1 Pome. Eq. (3d Ed.) § 385. Such offer is not required to be embraced in a bill, under the statute, to remove a cloud from title to real property.

[2] The respondent in the original bill, making his answer a cross-bill, avers the whole facts, the nature of the right, title, and interest of each of the parties, and appropriately offers in its prayer to do whatever the court might think his duty as one coming into a court of conscience (1 Daniel, Ch. Pr. § 441), and calls upon the original complainant and his father, who was made a party to the cross-bill, to do equity as required of all parties by the court. The general rule applies whether the plaintiff be an adult or infant, for the latter has no more right than an adult to seek relief from the other and hold the benefit of the transaction or facts at the same time and retain the property to the prejudice of those who have acted in good faith upon the transaction as valid. Hobbs v. N. C. & St. L. Ry., 122 Ala. 602, 26 So. 139, 82 Am. St. Rep. 103; Marx v. Clisby, 130 Ala.

502, 30 So. 517; Sloss-Sheffield S. & I. Co. v. Bd. of Trustees of U. of Ala., 130 Ala. 403, 30 So. 433; Robertson v. Bradford, 73 Ala. 116; Goodman v. Winter, 64 Ala. 410, 38 Am. Rep. 13; Smith v. Conner & Wife, 65 Ala. 371; Rogers v. Torbut, 58 Ala. 523; Bland v. Bowie, 53 Ala. 152; Eslava v. Elmore, 50 Ala. 587; Bell v. Craig, 52 Ala. 215; Pickens v. Yarborough, 30 Ala. 408; Garland v. Watson, 74 Ala. 323. And cases stating the requirements of disaffirming infants, as to the portion of the proceeds remaining in his hands by reason of contracts of which the election is made, are Manning v. Johnson, 26 Ala. 446, 62 Am. Dec. 732; Eureka v. Edwards, 71 Ala. 248, 46 Am. Rep. 314; Hayes v. So. H. B. & L. Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216; Grider v. Amer. Freehold Land Mtg. Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58; McCarty v. Woodstock Co., 92 Ala. 463, 8 So. 417, 12 L. R. A. 136; Amer. Freehold Land Mtg. Co. v. Dykes, 111 Ala. 178, 18 So. 292, 56 Am. St. Rep. 38; Bank v. Walkley, 169 Ala. 648, 53 So. 830; Bell v. Burkhalter, 176 Ala. 62, 57 So. 460; Ex parte McFerren, 184 Ala. 223, 63 So. 159, 47 L. R. A. (N. S.) 543, Ann. Cas. 1915B, 672. There was equity in the cross-bill.

[3] Under the complicated facts averred and the right of disaffirmance as affecting the minor's (B. G. Brasher's) interest in the lot and house by way of a gift from his father and his own moneyed contributions thereto—that of the material, etc., for plumbing—it was not necessary that he restore the status quo by redelivery of the possession of the property to Grayson on disaffirmance or repudiation of the mortgage after his disabilities were removed. In Bell v. Burkhalter, 176 Ala. 62, 65, 57 So. 460, the general rule of disaffirmance by an infant is given statement.

[4] Under the rule of subrogation, Grayson is protected in a court of equity in his discharge of liens, or the nature thereof as mechanics, materialmen, and laborers and amounts paid on purchase of the lot. Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948. And under the rule of the right administration of the subject-matter, situated and circumstanced as it was, by a court of equity, as regards the equitable rights of the parties under the cross-bill and answer, may be determined on the accounting, and the whole subject-matter in controversy be determined, as was done in Hayes v. Home B. & L. Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216.

The general rule where the bill is "to foreclose a mortgage and for a receiver pending suit, alleging that the property was insufficient to pay the mortgage debt, that the mortgagors were insolvent, and refused to deliver possession, and had failed to pay the taxes or keep the property insured, as required by the mortgage, contains equity, and states facts sufficient to warrant the appointment of a receiver," and where the debt is past due and

unpaid and there is failure of payment of insurance necessary to the protection of the property and security, on application, by mortgagee for a receiver, the court will not "narrowly" or closely scrutinize, for the mortgagor's benefit, conflicting affidavits of value. Jackson v. Hooper & Nolen, 107 Ala. 634, 1 headnote, 18 So. 254; Eslava v. Crampton, 61 Ala. 507, 515. The case here is somewhat different.

Adverting to the general rules applied to an infant disaffirming his contracts, it is declared in Amer. F. Land M. Co. v. Dykes, 111 Ala. 178, 18 So: 292, 56 Am. St. Rep. 38, "As a result of the voidable nature of an infant's contracts, he has the right, upon arriving at his majority, to repudiate them; so also may he, when his minority ceases, ratify and confirm them; and this without any new considerations;" that when he has, "during his minority, used or consumed the thing received, so that he has not in his possession or under his control the consideration or its proceeds, would be to deprive him of that protection against his improvidence and incapacity, which the law designed," if he is required to restore the status quo. "When the infant, upon reaching his majority, yet retains what he received by virtue of his contract, or any substantial portion thereof, or the proceeds thereof, the rule is quite different, and he may not repudiate or disaffirm his contract except upon condition, that he restores or abandons to the use of the other party that which remains in his possession of the consideration received;" and that "if he comes into a court of equity to be relieved of his contract, he must tender or offer to return so much of the consideration as he actually or constructively retains, and has it in his power to return." And it is further established as a general rule that the ratification or avoidance of such contract by an infant is as a whole. Sims v. Gunter, 201 Ala. 286, 78 So. 62; Amer. F. L. M. Co. v. Dykes, 111 Ala. 178, 18 So. 292, 56 Am. St. Rep. 38.

[5] We have thus noted that this record presents a different case from any of our reported cases. The complicated facts indicated by the cross-bill and answer thereto, and as affecting real property in which other adults, in the first instance, had equities on which the parties acted, would not deny relief for an accounting and enforcement of rights, liens, and claims of Grayson, and at the same time fail to protect the minor's interest in the lot to the extent of his contributions or that of his father for him, and that by him in the erection of the house and payment of purchase price of the lot. It follows that B. G. Brasher is permitted to disaffirm the mortgage and his contract to Grayson, upon payment to the register, by Grayson, the amount that the two Brashers, or either, have paid on the purchase price of the lot and for labor and material (according to its reasonable market value) used and expended in erecting the house on the lot; the property may be sold by order of the court for reimbursement to Grayson. This is in accordance with equitable principles in dealing with a complicated set of facts, partly with adults and partly with a minor, that resulted in the purchase of the lot and the erection of a dwelling house thereon. It was not the intention of the parties (as shown by the facts exhibited) to release any title, right or lien by the transactions had, or to the lot and dwelling thereon. The house and lot may be sold by order of the court for the right discharge of the respective amounts due to each party in interest, costs, and administration by the court, and any balance remaining of the purchase price to be paid to B. G. Brasher.

We have examined the case-made for the appointment of the receiver, and, in view of the respective interests and relations of the parties, think that no receiver should be appointed of the property and that it be not subject to such extraordinary expenses.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.