(121 So. 511)

**GABLE v. KINNEY et al.** (6 Div. 203.)

Supreme Court of Alabama. March 28, 1929.

A. A. Griffith, of Cullman, for appellees.

Wright & McAfee, of Decatur, and W. E. James, of Cullman, for appellant.

THOMAS, J. The bill is to reform and foreclose, and relief sought was denied.

Jennie B. Speegle, defendant below, purchased 40 acres of land from the appellant, complainant, on deferred payments evidenced by notes secured by a mortgage on the lands sold. At the time of this sale to Speegle, the appellant had executed a valid mortgage on said lands to Cárothers, and, as a part of the consideration passing to the appellant, Gable, the said Speegle assumed payment of such mortgage to Carothers; and thereafter. and pursuant to other agreements, Speegle executed a valid mortgage to the Federal Land Bank of New Orleans, La. (a defendant), and secured a loan from said land bank pledging the lands purchased from the appellant, Gable. It is shown without dispute that the greater portion of the money that Speegle borrowed from the land bank was paid to Carothers in or toward the extin-

guishment of the mortgage that the appellant Gable had executed to the Carothers on said land. Thereafter, the said O. E. Speegle, who was the husband and agent of Jennie B. Speegle, negotiated a trade or exchange with Kinney of the 40 acres of land purchased by his said wife from appellant Gable, for a tract of land that Kinney owned near the city limits; and O. E. Speegle, at said time, was acting as the agent of appellant, Gable, in negotiating said trade or exchange with the said Kinney, or such was the legal effect of his action or conduct in the premises. The negotiations were consummated, and resulted in an unconditional exchange of lands between Jennie B. Speegle and appellee E. C. Kinney, with the consent, knowledge, and approval of the appellant, Gable; that said Kinney, as a part of the consideration passing to Jennie B. Speegle, assumed the payment, and is paying on said indebtedness—the mortgage executed by the said Jennie B. Speegle to the Federal Land Bank of New Orleans—and said appellee has also executed to the said Jennie B. Speegle his warranty deed to the property exchanged, and received from Mrs. Speegle and husband a warranty deed to the 40 acres that she had formerly purchased from appellant Gable. And, as stated, the evidence shows that this transaction was negotiated and executed with the express consent, acquiescence, and approval of the appellant and his agreement to accept a mortgage from said Speegle and husband on the lands that they had exchanged with Kinney, to release his (appellant's) said mortgage on the tract of land formerly sold to the said Jennie B. Speegle. This agreement was carried out by all of the parties, the exchange of lands effectuated as required by law or in respect to the rules obtaining in a court of equity, and thereafter appellant changed his mind, sought to repudiate the agreement, to assert his right to his former mortgage, and foreclose the same. To that end he filed the original bill to foreclose, making the several parties in interest, as we have indicated above, parties defendants.

Appropriate answers were filed by the several defendants, setting up as a separate defense to the foreclosure sought, the things and matters alleged in respective answers; appellee Kinney relies on estoppel; the land bank of New Orleans pleads that it should be subrogated to the extent of the money advanced by it in extinguishment of the original mortgage held by said Carothers against the appellant; and Jennie B. Speegle and O. E. Speegle set up the agreement entered into with them, and approved by the appellant, that he specifically authorized them to make the trade or exchange with the appellee E. C. Kinney. The relief sought was denied, and the bill was dismissed at appellant's cost.

The satisfaction of the mortgage to appellant, in question, was a material step in the exchange of the respective properties, and necessary to the effectuation of the transfer of several liens on this and other land, and the payment, release, and discharge of the debts thereon, pursuant to the agreement of exchange.

▮ When the evidence of appellant, and other evidence is carefully considered, he is bound by the estoppel of fact set up and shown. Ivy v. Hood, 202 Ala. 121, 79 So. 587. He has by a course of conduct induced others to the reasonable inference of fact that he agreed to the exchange and transfer of security in satisfaction of his mortgage in question, and induced such other parties in interest to act to his prejudice upon such conduct and reasonable inference. Federal Land Bank v. Southmont Mfg. Co. (Ala. Sup.) 122 So. 426,[1] and authorities; Tobias v. Josiah Morris & Co., 126 Ala. 535, 28 So. 517. The general rule is thus stated in Tobias v. Josiah Morris & Co., supra: "If a person by an expression or by negligent silence, or by a course of conduct, so conducts himself that another may reasonably infer the existence of an agreement or license, and acts upon such inference, whether the former intends that he should so act or not, the party using such language or who so conducts himself is estopped from denying the reasonable inference to be drawn from his words or conduct."

In Fields v. Killion, 129 Ala. 373, 376, 29 So. 797, 798, it was held that: "Where a mortgagee agrees with the mortgagor and a third party desiring to purchase a portion of the mortgaged premises, that the sale can be made, and further states to the purchaser that said mortgage should never 'bother him,' and the mortgagor thereupon sells and conveys to said third party the part of the mortgaged premises referred to in the agreement, and the purchase money paid by the purchaser is delivered to the mortgagee, as against said purchaser, the mortgagee is estopped from asserting any right under the mortgage or enforcing the mortgage upon the lands so purchased; and a bill filed by the purchaser to enjoin the prosecution against him of an action of ejectment by the mortgagee who had foreclosed the mortgage on all the property included therein, and had become the purchaser at said sale, and to have the mortgage cancelled as to the lands purchased by the complainant, contains equity;" and that "The estoppel relied upon is known as an equitable estoppel, or estoppel in pais, and the law on the subject is well settled. 'The vital principle [says Herman] is that he by his language or conduct induces another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This

---

[1] Post, p. 447.

remedy is always so applied as to promote the ends of justice.' 2 Herman on Estoppel, § 934; Hendricks v. Kelly, 64 Ala. 391; Nelson v. Kelly, 91 Ala. 569 [8 So. 690]; McCravey v. Remson, 19 Ala. 430 [54 Am. Dec. 194]; 7 Am. & Eng. Ency. Law, 18; 4 Am. & Eng. Dec. in Equity, 258."

The foregoing was rested upon Hendricks v. Kelly, 64 Ala. 388, where Mr. Chief Justice Brickell declared: "Representations, or admissions, which have been acted on by others, especially when made in answer to inquiries for information on which to base action, and when the purpose of the inquiry is made known, become conclusive, and operate as an estoppel on the party making them, in all cases between him and the person whose conduct he has influenced, if loss must ensue from a denial of their truth. 1 Brick. Dig. 296, §§ 10, et seq. The representations or admissions may have been made innocently, and inadvertently; but they will become conclusive, if the party to whom they are made is induced to act upon them, and must sustain injury because of such action, unless they are allowed all the operation they could have if true in point of fact, and made deliberately."

This rule has since been adhered to in this court and applied in the case of negligent silence that worked estoppel, Graves v. Leach, 192 Ala. 164, 168, 68 So. 297; Ivy v. Hood, 202 Ala. 121, 79 So. 587; Boone v. Byrd, 201 Ala. 562, 78 So. 958; South & North Alabama R. Co. v. Alabama G. S. R. Co., 102 Ala. 236, 14 So. 747; Daniel Bros. v. H. R. Jordan & Son, 146 Ala. 231, 40 So. 940, and all who claim under a person who is estopped are also bound thereby. McCravey v. Remson, 19 Ala. 430, 54 Am. Dec. 194; Boone v. Byrd, supra; Federal Land Bank v. Southmont Mfg. Co. (Ala. Sup.) 122 So. 426;[1] Calera Development Co. v. Burgin, 214 Ala. 214, 107 So. 84; 21 C. J. p. 1201; Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79.

The facts of the instant case are even stronger than those before the court in Fields v. Killion, supra. Here the appellant executed a power of attorney—whether or not properly executed is of no controlling importance—authorizing that attorney in fact to cancel said mortgage, and this action was in consonance with his previous acts and promise, and he also wrote or signed a note in pencil "on an envelope" to Kinney, the appellee, that he "was willing for them to trade," and gave it to Speegle for delivery to such other, and it was so delivered and acted upon by that other—the appellee; the latter was without fault in so acting, and, in good faith and in reliance upon such agreement, declarations, and conduct of appellant, changed his position or relation with reference to the subject-matter and to his prejudice and loss. That is to say, such would be the prejudicial

effect if appellant be allowed in equity to repudiate his conduct and reasonable inferences therefrom in relation to the subject-matter and the proposed foreclosure of the mortgage sought by complainant.

The learned trial judge well states this phase of the case:

"Whether valid or not, as a release of the mortgage, this instrument certainly has evidentiary value upon the question of estoppel. The plaintiff himself admits that he signed this release. He admits further that he had theretofore signed a written statement to the defendant, Kinney, stating that he was willing for Mr. Kinney and Mr. Speegle to make the trade, that is, the trade of the places. In Mr. Gable's testimony we find the following statement:

" 'Well, he just said he had a paper there Mr. Kinney wanted me to sign, showing I was willing for them to trade, swap places. And I told him I did not want to sign anything that would affect my papers. He said, No, that would not make any difference, that would just show to Mr. Kinney I was willing for them to trade. I didn't care for them trading and I said I would sign it with the understanding I was to get first mortgage on the property he was trading for.'

"Quoting further, 'Before they traded he said something to me about it a couple of times. The first time I knew he was on a trade he came to me and asked was I willing to transfer my papers, that they were on a trade. Some time before they traded he said they were on a trade and wanted to know would I change the mortgage on my farm for the property here in case they traded. That was what he asked me. When I told him I did not object to them trading, I just as soon have first mortgage here on this property as on the farm, because I thought I knew nothing was against the farm only what I had against it, on the farm.'

" 'Q. If Speegle had kept his contract with you and had given you first mortgage on the land he received from Kinney you would have considered your mortgage paid that you are now undertaking to foreclose, wouldn't you?'

" 'A. Yes, sir.'

"There are other statements in his evidence to the same effect. In other words the complainant with full knowledge that the defendants, Speegle and E. C. Kinney, were contemplating and had agreed to make a trade of a place upon which the complainant had a mortgage for another place which the defendant, E. C. Kinney, owned, and knowing that he himself had a mortgage on it and that this mortgage was the only interest that he had in the place and knowing that the defendant, E. C. Kinney, was unwilling to make the trade unless this mortgage was satisfied or transferred to the other place, wrote to the defendant, Kinney, that he was willing to the trade and signed a release of the mort-

---

[1] Post, p. 447.

gage or power of attorney to have it satisfied, and this complainant having done this and the defendant, E. C. Kinney, having made the trade, and having swapped places, which the evidence showed was of equal value, and having assumed a mortgage of one thousand dollars to the Federal Land Bank, and having taken back a mortgage on the place he traded to protect himself against the Federal Land Bank mortgage and having done this on the faith of the complainant's statement, the complainant is not in a position now to claim that he has the first mortgage on the land which Kinney purchased. Granting that the two places are of the same value, it is evident that there would be a grave injury to Kinney to now permit the complainant to have a first mortgage on this place. It may be that there was a misunderstanding between the complainant and the defendant, Speegle, in regard to his having a first mortgage on the place which Speegle obtained in the trade with Kinney, and even granting that Speegle misled him in this matter, this breach of faith on the part of Speegle could not be visited upon the defendant, Kinney."

The expression in Hays v. Ingham-Burnett Lumber Co., 217 Ala. 524, 116 So. 689, that an executory promise to renew a lease by some of the owners thereof, *without consideration*, which the imputation of bad faith or fraud did not estop, is not to a contrary effect to the foregoing announcements. And so of an executory agreement which was void under the statute of frauds and held not effectual by estoppel when not acted upon by the parties and no fraud or inequitable conduct intervened; a mere breach of promise cannot constitute an estoppel in pais. Thompson v. New South Coal Co., 135 Ala. 630, 34 So. 31, 62 L. R. A. 551, 93 Am. St. Rep. 49; Clanton v. Scruggs, 95 Ala. 279, 10 So. 757; Allen v. Bromberg, 163 Ala. 620, 624, 50 So. 884; Weaver v. Bell, 87 Ala. 385, 6 So. 298.

It is established in this jurisdiction that one who pays off a prior lien or mortgage, under circumstances protected in equity by rule of subrogation, is entitled to the right or title of such lienholder. Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948; Brasher v. Grayson, 217 Ala. 674, 117 So. 301, 303; Hope of Ala. Lodge v. Chambless, 212 Ala. 445, 103 So. 54; Scott v. Land, Mortgage, Investment & Agency Co., 127 Ala. 161, 28 So. 709; New England Mortgage Security Co. v. Fry, 143 Ala. 637, 42 So. 57, 111 Am. St. Rep. 62. The evidence shows that Mrs. Speegle, acting through her husband, secured a loan from the Federal Land Bank and applied the sum indicated by the evidence in payment of the debt of complainant to Carothers, that was secured by first mortgage on the land in question. The Federal Land Bank is protected by subrogation to the extent of its moneys so paid to Carothers, as

complainant was thereby and to such extent a beneficiary of the Speegle loan.

The record has been carefully examined, and the decree rendered is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

